# CHARLESTON.

## PRICE *v.* CHESAPEAKE & O. R. CO.

Submitted January 25, 1899—Decided April 22, 1899.

1. RAILROADS—*Carriers of Passengers—Ticket—Ejection of Passenger.*

    A passenger upon a railroad train must show his ticket, or "conductor's check" given in the ticket's place, when called upon by the conductor, and, if he fail to do so, whether willfully or because he has forgotten having the ticket or check, and refuses to pay fare, he cannot recover damages for his ejection, if unnecessary force is not used. (p. 541).

2. INSTRUCTIONS—*Error.*

    An instruction which singles out certain facts and makes the case turn on them, ignoring other material facts of the case, is erroneous. (p. 543).

Error to Circuit Court, Fayette County.

Action by William M. Price against the Chesapeake and Ohio Railroad Company. Judgment for plaintiff, and defendant brings error.

*Reversed.*

SIMMS & ENSLOW, for plaintiff in error.

C. R. SUMMERFIELD and J. W. ST. CLAIR, for defendant in error.

BRANNON, JUDGE:

This is a writ of error from a judgment of the circuit court of Fayette County in an action of trespass on the case by William M. Price against the Chesapeake & Ohio Railroad Company, which writ of error was obtained by said company. In July, 1895, Price came to Charleston from some point below that city, and, being utterly without any means, and desiring to get to Virginia, he applied to the county court of Kanawha for transportation to Hinton. The sheriff, under the direction of the court, procured for Price a ticket from Charleston to Hinton, ninety miles.

Price showed his ticket to the conductor who conducted the train as far as Handley, and the ticket was punched by the conductor and given back to Price. The next conductor beyond Handley took up Price's ticket, and gave him a conductor's check in place of the ticket, which check was commonly used, and intended to show that the passenger was entitled to ride to the end of next section. The train was an accommodation train, stopping at all the stations, where passengers would leave and get on the train. After going about twenty-five miles from the point where the conductor had taken up the ticket, the train stopped at Hawk's Nest, and the conductor, supposing that Price had gotton on at that point, having forgotten that he had taken up his ticket and given him a check, inquired of Price about his fare, and Price told him that he had already given a ticket to him. The conductor asked him if he had a check. Price said he had not, and denied that he had one, as the conductor says. Price did not show the check, or say that he had one, and said, as a witness, that he had forgotten that he had one. The conductor told Price that he did not remember having taken up any ticket from Charleston to Hinton, but he would look among his tickets in another car, and if he found such a ticket it would be all right. The conductor says he looked among his tickets, and found no such ticket, and, after some time, he returned to Price, and informed him that he had found no such ticket, and was satisfied that the plaintiff had given him no such ticket, and demanded fare, which Price refused to pay, but was allowed to go on to the next station; and the plaintiff failing or refusing to show any conductor's check or pay fare, which was demanded of him, he was told to get off of the train, which he did, without the use of force. After he got off the train, a person standing by observed the conductor's check under Price's hatband, but the train was gone. The next day the conductor, having learned of the check, offered to carry Price to Hinton, but Price refused, saying he was going to sue the company, and at once brought the suit.

Upon the trial, the court gave for the plaintiff an instruction (No. 2), saying to the jury that "if they believe from the evidence that the plaintiff, on 25th day of July, 1895, had a ticket on defendant's road from Charleston to

Hinton, which ticket was purchased and given him by the deputy sheriff of Kanawha County, and that while the plaintiff was on his journey between these stations a conductor of the train, upon which the plaintiff was a passenger, ejected him before he reached the said station of Hinton, then the defendant company is liable to the plaintiff in this action for such actual damages as the jury may believe he sustained." It will be at once seen that this instruction says that if the plaintiff had a ticket, and was ejected before reaching its destination, the company must answer in damages; binding the jury to impose damages, utterly ignoring, not even mentioning, the fact that Price had his check to show his right of passage and identify him as the passenger, and that he failed or refused to show it when lawfully asked for it. This is plainly error, provided those facts, in law, have a material effect upon the case. That instruction gave only the plaintiff's case, and on it bound the jury to a verdict for the plaintiff, and never mentioned the defendant's case as proper to be considered along with the plaintiff's case. Both Price and the conductor say that the conductor gave Price that check, and that the conductor demanded fare or ticket, and that Price did not show that check, though it was upon his person. He says the conductor gave him the check, or, rather, that he put it under Price's hatband. The conductor says he gave it to him in his hand. Price only says that he had forgotten the check. The conductor says he also had forgotten the check. Now, what is the law pertinent to the subject? That late and very excellent work, Elliott on Railroads, says (volume 4, section 1594): "As a general rule, a ticket (or a pass) is the only evidence, as between the conductor and the passenger, of the latter's right to transportation. He must produce it when demanded, and if he has no ticket, or fails to exhibit it in accordance with the rules of the company, and refuses to pay fare, he may be expelled. The fact that he may have had a ticket, but lost it, makes no difference." Hutchinson (Carr. section 572) says: "A regulation by which passengers are required to show their tickets to the conductor whenever called upon to do so, and making it the duty of such conductor to remove from the train all passengers who refuse to do so, or pay their fare, has also been held to be reasonable

and proper; being necessary to prevent imposition upon the carrier by making one ticket serve as a passport for more than one passenger. And it will not matter that the conductor may know that the passenger has paid for a ticket, or that he has already seen it, or that it has been shown to him more than once, or that the passenger may offer to prove that he has it. He must show it; otherwise, the conductor will be justified in expelling him, in obedience to the regulation. And when a regulation of this kind exists, if the passenger should be so unfortunate as to lose his ticket, he may be required to pay his fare again." In *Jerome* v. *Smith*, 48 Vt. 230, the plaintiff bought a ticket with coupons attached, and a conductor detached one of the coupons, and gave him instead a conductor's check, and, before reaching the point for which the check was given, another conductor took the train, and demanded the check, which the plaintiff could not find, but tendered the ticket, with the remaining coupons, which was refused, and the plaintiff was ejected, without unnecessary force. The ejection was held justifiable. The opinion says: "As the plaintiff did not know what the symbols on the check meant, so probably he did not know what those on the ticket and coupon meant, but, however that may have been, such checks are in common use among conductors on railroads as evidence of the right of passage, and the case not only does not show but that he understood what the purpose and effect of this one was, as persons ordinarily would, but does impliedly show that he did so understand, because it appears he searched for it to pay his fare with when he saw the next conductor approaching him collecting fares. Though it was delivered to him only by placing it in his hatband, as he did not object, that was as much a delivery to him as placing it in his lap or hand, and was sufficient to invest him with the ownership of it, and to bind him to take care of it. While he held that check, he had not paid his fare beyond where that conductor was to go, but had what would pay it, or that of any other person, the rest of the way."

I remark that Price's evidence showed that he knew what was the purpose of the check. The Vermont court says that it was the passenger's duty to keep the check safely, and, if lost, the loss was his, and he was situated

as he would have been if the coupon had been returned to
him, and he had lost that,. and as any one would be who
had bought a ticket to an opera or lecture and had lost it.
Having lost it, he was called upon by the conductor to
pay his fare, and had no ticket or check to pay with, and
refused to pay it in money, and thus he refused to pay at
all, and was thus rightly ejected. Fetter (Carr. Pass.
section 279 )says: "The loss of a ticket by a passenger
falls on him, not on the carrier. The reason is obvious.
Passage tickets, in the absence of restrictive conditions,
are assignable, and good in the hands of any one. If the
loss of a ticket were a sufficient excuse for nonpayment
of fare, the carrier might be subjected to the burden of
carrying two or more persons for a single fare." Of course,
the same rule applies to the conductor's checks. In *Hibbard*
v. *Railroad Co.*,15 N. Y. 455, it was held that a passenger
who had a ticket in his pocket, and had exhibited it once
to the conductor, and refused to exhibit it again when
called on, was properly ejected. In *McKay* v. *Railway*,
*Co.*, 34 W. Va. 65, (11 S. E. 737), this Court held that a
conductor may demand a ticket, and on failure to produce
it, may demand fare, and on failure to pay it may lawfully
eject the passenger, using no more force than necessary.

Now, if this conductor had not forgotten that he had
given this check, but well remembered it, the law gave him
the right to call on Price to see it; but, in such case, there
would be some pretense to say the conductor was in the
wrong. But, in fact, the conductor had forgotten it, and
did not identify Price. No human being on an accommoda-
tion train, stopping at every station, the passengers changing
all along the route, can remember all of them, or recol-
lect about their tickets. He need not remember them, as
the law gives him right to call upon the passengers to show
their tickets whenever he becomes uncertain, and it is a
small burden upon the passenger to show his ticket or
check. The conductor had dozens of tickets to remember;
Price, only one. It was the duty of Price to remember
his check, rather than of the conductor. How can he say
that the company is responsible for the conductor's bad
memory, when his own was bad, especially as the law cast
upon him the duty to remember his check, and present it
when asked for, or, if forgotten or lost by him, then to pay

his fare? The fact stands out, undenied and unalterable, that when called upon to produce this check, and after the conductor gave him a considerable time to produce it, he presented no evidence of his right of passage. Moreover, it seems quite unlikely that Price had forgotten this check. It would rarely occur. The evidence of the deputy sheriff who bought the ticket for Price at Charleston shows that Price was eager to stop over at some place before reaching Hinton, and this induces the impression that Price did not forget his check, but, desiring to stop over, retained it, and refused to produce it, in order that he might use it when he wanted to go on to Hinton. I repeat that under these principles of law, which seems to be well settled, that instruction ignoring all facts upon which the defendant rested, and thereby virtually saying to the jury that they constituted no defense, was erroneous; for an instruction canot single out certain facts, and say that, if they exist, the party is liable, ignoring facts which are material in law for the decision of the case. *McCreery's Adm'x* v. *Railroad Co.*, 43 W. Va. 110, (27 S. E. 327); *Webb* v. *Packet Co.* 43 W. Va. 800, (29 S. E. 519).

Instruction No. 1, asserting the general duty of a railroad to carry its passengers safely and land them at their places of destination, and that any failure of the employes to do so renders the railroad liable, as a general proposition, may be unobjectionable. If it were a binding instruction, it would be bad for reasons given against instruction No. 2; but it is very abstract, as applied to this case, or, rather, too restrictive, and may be objectionable, because, as applied to the case, misleading to the jury. *Fisher* v. *Railroad Co.* 42 W. Va. 183, (24 S. E. 570). For these reasons we reverse the judgment, set aside the verdict, and grant a new trial.

*Reversed.*