# CHARLESTON.

## STATE *v.* DODDS.

Submitted September 5, 1903—Decided December 5, 1903.

1. INSTRUCTIONS.

   It is the object and office of instructions to define for the jury, and to direct their attention to, the legal principles which apply to, and govern, the facts proved or presumed in the case. The instructions should simply develop the rules of law governing the particular facts,—all the facts,—not a part only, which the evidence tends to establish; and they are to be interpreted and judged of, not in any abstract way, but with reference to those facts. (p. 295).

2. INSTRUCTIONS.

   The instructions given to the jury must be taken together; and it is not necessary to insert in each separate instruction,

all the exceptions, limitations and conditions which are inserted in the instructions as a whole.   (p. 296).

3. INSTRUCTIONS.
An instruction which singles out, and gives undue prominence to certain facts, ignoring other facts, proved, and of equal importance in a proper determination of the case, is improper. (p. 300).

Error to Circuit Court, Mercer County.   Matt Dodds was convicted of murder and brings error.

*Affirmed.*

HALE & PENDLETON and R. C. & B. McCLAUGHERTY, for plaintiff in error.

ATTORNEY .GENERAL *and* J. M. ANDERSON, for the State.

MILLER, JUDGE:

At the January term, 1903, of the criminal court of Mercer County, Matt Dodds, the plaintiff in error, was indicted for the murder of one Lee Palmer.  At the same term, he demurred to the indictment; and the demurrer was overruled.  He then entered his plea of not guilty, upon which, issue was joined.  The indictment is in the form prescribed by section 1 of chapter 144 of the Code; and is sufficient upon demurrer of motion to quash. *State* v. *Douglas,* 41 W. Va. 537.  At the following April term, the defendant was tried, found guilty of murder in the second degree, and sentenced to be confined in the penitentiary for eight years.  To this judgment and sentence the defendant was refused a writ of error by the circuit court of the county aforesaid.  Defendant then applied for, and was, by this Court, allowed a writ of error.  On the trial, certain instructions were given to the jury at the instance of the State, to which defendant objected; and certain other instructions were given at his instance, and others offered by him were refused, to which refusal he excepted.  All of the rulings of the court, the instructions given, as well as those refused, and the evidence introduced by both the State and defendant, are certified in a bill of exceptions, and made part of the record.

Plaintiff in error insists that the verdict of the jury was and is contrary to the law and evidence, and should have been set aside; that the court erred in giving to the jury the instructions

for the State, and in refusing to give instructions Nos. 4, 5 and 6 asked for by him.

The evidence proves that both defendant, Dodds, and the deceased, Lee Palmer, were machinists, and, at the time of the homicide, were employed by the Norfolk & Western Railway Company in its round house in Bluefield, in said county; that on the 18th day of December, 1902, about 2:30 p. m., the defendant and one Mike Sullivan came to said round house together; that, at the time, Palmer was in the cab of an engine repairing it; that one J. R. Tillson was his helper, and engaged in aiding Palmer in making the repairs; that a helper is one who does the heavy work of a machinist, but is not himself a machinist; that when Dodds and Sullivan came up to where said engine was, Sullivan passed on and did not say anything; but Dodds stopped and asked Tillson what he was doing machinist work for, and Tillson replied that he was doing what Palmer had told him to do. Dodds then said, "Just wait and see what I will say to him;" and about that time Palmer came out of the cab from his work. Dodds then said to him: "What are you letting your helper do machinist work for?" Palmer replied that he was not letting his helper do machinist work, and Dodds replied, "The hell you ain't," or something to that effect. Dodds and Palmer then began to dispute, and Dodds struck Palmer; that several licks were then struck by the parties; and then Dodds struck Palmer on the head with his pistol. They then became separated about eight feet; that both of them appeared to be angry and excited; that Palmer then with clenched fist, and the appearance of being angry, came towards Dodds, and Dodds advanced toward Palmer; that when they got together, witness thought, Palmer rather fell up against Dodds, and that Dodds had his pistol in his hand, and put it up against Palmer's breast, and the pistol fired. Palmer fell to the ground and died in a few minutes and Dodds walked away. Witness says that when Dodds and Palmer were striking at each other, he saw Dodds take his pistol out of his overcoat pocket and strike Palmer once, on the head with it; that he saw nothing in Palmer's hands, during the fight, except what appeared to be a pipe. After the shooting, Palmer's tools were on the steam chest, where he had had them about his work. Another witness says that Palmer, during the fight, had nothing in his hands,

except a pipe. It is also shown that the two men were about the same size.

The defendant testified that he was a member of the organization, known as the "Machinists' Union"; that he was a member of the committee of the organization, whose duty it was to see that the rules and regulations of the organization were not violated by any of its members; that on the day Palmer was killed, he was in the city of Bluefield in Corvin's pool room, where he had gone to see some acquaintances; that while he was there Mike Sullivan asked him to go over to the machine shops and round house with him; that Sullivan stated that he wanted to see a man there by the name of Thomas, on business; that he went along simply at Sullivan's request; that he saw a man working on an engine, doing machinist work; that he asked him whether he was a machinist or a helper; that the person replied that he was a helper, and doing the work that Palmer had directed him to do; that Palmer came out of the cab of the engine about that time, when defendant asked him what he was letting his helper do his work for; that Palmer replied, "he is not doing my work, he is doing just what I told him to do." Defendant then said, "the hell he ain't;" and Palmer replied, "it is none of your damned business," and defendant said to Palmer that it was his business; that he was a member of the committee of "The Machinists' Union," whose duty it was to see that a helper did not perform a machinist's work; that Palmer then went to his tool chest on the engine, and defendant thought he got a coal chisel, (which is a piece of iron a foot or a foot and a half long,) and that they then advanced toward each other. Defendant also testified that during the fight he received a wound on the back of his left hand and on the wrist of his left arm. He stated, among other things, that the night before the shooting he had stayed at a house of ill-fame in Bluefield; and that on the day of the occurence he had taken two or three drinks of whiskey. He also gave considerable other testimony, not of a very convincing character, the object of which, was to mitigate, and reduce the grade of, the offense charged.

The instructions given by the court, at the instance of the State, are in the words following:

"No. 1. The court instructs the jury that under the law a person is presumed to intend that which he does or which is the

immediate and necessary consequences of his acts, and if the jury believe from the evidence in this case that the prisoner, Matt Dodds, with a deadly weapon without any or upon slight provocation, intentionally shot and killed Lee Palmer in Mercer county, then the prisoner under the law is presumed to be guilty of murder in the first degree.

"No. 2. The court instructs the jury that in considering all the evidence in this case they may consider the evidence of the prisoner and how far, if at all his interest in the case might bias his testimony, and to give his evidence and all other evidence in the case just such weight as they may think it entitled to.

"No. 3. The court instructs the jury that in the. indictment in this case there is charged murder of the first degree, murder of the second degree, voluntary manslaughter, involuntary manslaughter and assault and battery. Murder of the first degree is punished in this state by death or confinement in the penitentiary for life. Murder of the second degree is punished by confinement in the penitentiary not less than five nor more than eighteen years. Voluntary manslaughter is punished by confinement in the penitentiary not less than one nor more than five years. Involuntary manslaughter and assault and battery are misdemeanors and punished by confinement in jail or fine or both.

"No. 4. The court instructs the jury that a reasonable doubt such as is contemplated in law is not a mere fanciful or imaginary doubt, but is a fair and substantial doubt based on the evidence or lack of evidence in the case and one for which a man who entertains such doubt should be able to give a good and substantial reason arising from the evidence or a lack of evidence in the case."

The court also gave to the jury, on request of the defendant, the following instructions:

"No. 1. The court instructs the jury that they have no right to arbitrarily disbelieve the testimony of the prisoner, but that they should weigh and consider his testimony the same as any other witness in the case, giving to it such weight as they think it is entitled to.

"No. 2. The court instructs the jury that accidental killing is not such a matter of defense as throws upon the prisoner the

burden of proving it by a preponderance of the evidence; that it is the duty of the state to allege and prove in this case that the prisoner killed Lee Palmer intentionally or willfully, and if the evidence in the case taken all together, raises in the minds of the jury a *reasonable* doubt as to whether the prisoner killed Lee Palmer intentionally or accidental, they should not find the prisoner guilty of anything higher than involuntary manslaughter or assault and battery.

"No. 3.    The court tells the jury that if they believe from the evidence in the case that on the day that Lee Palmer was killed and before he was killed, the prisoner and one Mike Sullivan went to the machine shops referred to in the evidence and that the prisoner went there at the request of the said Sullivan as detailed in his evidence and that after the prisoner got to the said machine shops, he became engaged in a quarrel with the said Palmer which resulted in a fight between them, and that while engaged in said quarrel and fight, the said Palmer and the prisoner were excited, angry and that their passions were aroused, and that in said fight, while the prisoner was excited, angry and his passions aroused, he shot and killed the said Palmer, they cannot find the prisoner guilty of anything higher than voluntary manslaughter."

But the court refused to give, at the instance of the defendant, the following:

"No. 4.    The court instructs the jury that there is charged in the indictment in this case, voluntary manslaughter and murder in the second degree, and if they believe from the evidence in the case that the prisoner is guilty of one of said offenses and they have a *reasonable* doubt as to which of said two offenses he is guilty of, they should give to him the benefit of said doubt and find him guilty of voluntary manslaughter.

"No. 5.    The court instructs the jury that there is charged in the indictment in this case assault and battery and voluntary manslaughter and if they believe from the evidence in the case that the prisoner is guilty of one of said offenses and they have a *reasonable* doubt as to which of said two offenses he is guilty, they should give to him the benefit of said doubt and find him guilty of assault and battery.

"No. 6.    The court instructs the jury that among the other offenses charged in the indictment in this case, there is charged

murder in the second degree and voluntary manslaughter, and that if they believe from the evidence in this case that the prisoner is guilty of one of the said offenses of murder in the second degree or volutary manslaughter and they have *reasonable* doubt as to which of two said offenses the prisoner is guilty, then they should find him guilty of voluntary manslaughter."

It is contended for plaintiff in error that, upon the facts and circumstances disclosed by the record, he is not guilty of a higher grade of offense than voluntary manslaughter. It is argued that Instruction No. 1, given at the instance of the state, does not propound the law correctly. The instruction seems to have been taken from *Cain's Case*, 20 W. Va. 681, and *Welch's Case*, 36 W. Va. 690, but it does not contain the words, "and the necessity rests upon him of showing extenuating circumstances; and unless he proves such extenuating circumstances, or they appear from the case made by the State, he is guilty of murder in the first degree,"—found in point 6 of the syllabus of the last mentioned case. It is pointed out that the instruction is otherwise faulty because it uses the words, "presumed to be guilty of murder" in the first degree, instead of the words, "is *prima facie* guilty of murder" in the first degree. It is argued that the latter part of the instruction in *Welch's Case*, above quoted, is necessary to call the attention of the jury to the *prima facie* effect of the recited facts if proved to the satisfaction of the jury, and the proof whereby that *prima facie* effect may be overcome by the defendant; that by the instruction, as given, the attention of the jury was called to the legal presumption, arising from the facts recited, and which the jury were supposed to believe from the evidence, but that no intimation is given in the instruction as to how this presumption may be rebutted by the accused; that the effect of the instruction is to tell the jury that under the facts set out in the instruction the law presumes the prisoner to be guilty of murder in the first degree; and that they *must* find the killing to be willful, deliberate and premeditated.

It is the object and office of instructions to define for the jury, and to direct their attention to, the legal principles which apply to, and govern, the facts, proved or presumed, in the case. "The charge should simply develop the rules of law governing the particular facts—all the facts, not a part only, which the evi-

dence tends to establish; and it is to be interpreted and judged of, not in any abstract way, but with reference to those facts." Bish. Crim. Procd. section 978. "A charge to the jury must be taken together, and it is not necessary to insert in each separate instruction all the exceptions, limitations and conditions which are inserted in the charge as a whole." Sackett's Instructions, 24; *People* v. *Cleveland,* 49 Cal. 578.

"Murder by poison, lying in wait, imprisonment, starving, or any willful, deliberate, and premeditated killing, or in the commission of or attempt to commit, arson, rape, roberry or burglary, is murder of the first degree. All other murder is murder of the second degree." Code, chapter 144, section 1.

By Instruction No. 3, given at the instance of the State, the court informed the jury that, in the indictment, there was charged, (against the defendant,) murder of the first, and murder of the second degree; voluntary and involuntary manslaughter; and assault and battery, and defined the punishment and penalty which might be imposed upon conviction for any one of the offenses named. In No. 1, the court instructed the jury that, if they believed from the *evidence in the case,* that the prisoner, Matt Dodds, with a deadly weapon, without any, or upon slight, provocation, intentionally shot and killed Lee Palmer in Mercer County, then the prisoner, under the law, is presumed to be guilty of murder in the first degree.

What is meant by the statement that "the prisoner, under the law, is presumed to be guilty of murder in the first degree?" A "presumption" is a rule of law, that courts or juries shall or may draw a particular inference from a particular fact or from paticular evidence, unless and until the truth of such inference is disproved.

A presumption of law is a rule of law that a particular inference shall be drawn by a court or jury from a particular circumstance.

A presumption of fact is a rule of law that a fact otherwise doubtful may be inferred from a fact which is proved. A presumption is an inference as to the existence of a fact, not actually known, arising from its usual or necessary connection with others which are known.

Presumptions of fact are but inferences drawn from other

facts and circumstances in the case, and should be made upon common principles of induction.

Presumptions of fact are at best but mere arguments, and are to be judged by the common and received tests of the truth of propositions and the validitiy of arguments.

Presumption is allowed to *prove facts,* even in criminal cases; and one of the highest modes of proof is to show the existence of circumstances, which could not have existed if the fact proved had not existed.

Juries Have the right *to infer* what a man intends to do, and what he actually does, from his conduct, beyond the positive testimony in the case. Lawson on Presump. Ev. 639, 640.

From the foregoing definitions we may say that the presumption stated in the instruction under consideration is one of fact, dependent for its force and effect upon the belief of the jury from the evidence in the case, that the defendant, Matt Dodds, with a deadly weapon, without any, or upon slight provocation, intentionally shot and killed Lee Palmer. Under our statute, every homicide is *prima facie,* murder· in the second degree. Where a homicide is proved, the presumption is, that it is murder in the second degree. It is *prima facie* attended with malice, which enters into murder as one of its ingredients. If the State would elevate it to murder in the first degree, she must establish the characteristics of that crime; and if the prisoner would reduce it to manslaughter, the burden of proof is upon him. *Hill's Case,* 2 Grat. 595; *Cain's Case,* 20 W. Va. 679; *Welch's Case,* 36 W. Va. 690.

By the statute above cited, the willful, deliberate, and *premeditated* killing of a person is defined to be murder in the first degree. He who does an act willfully, does it on purpose; and he who does an act on purpose, does it *willfully.* The next ingredient of the crime is that it must be deliberate. To deliberate is to reflect, with a view to make a choice. If a person reflects, though but for a moment before he acts, it is unquestionably a sufficient *deliberation* within the meaning of the statute. The last requisite is that the killing must be *premeditated.* To premeditate is to think of a matter before it is executed. The word, *premeditated,* would seem to imply something more than *deliberate,* and may mean that the party not only *deliberated,*

but had formed in his mind the *plan of destruction.* Smith's Trial, p. 230, 321; 2 Va. Cas. 88.

The defendant, with his pistol, unlawfully shot and killed Palmer. From that fact alone he is presumed to be guilty of murder in the second degree. A man shall be taken to intend that which he does, or which is the immediate or necessary consequence of his act. Therefore, Dodds is *prima facie* taken to have intentionally, and, therefore, willfully and purposely, killed the deceased.

The general definition of the statute does not touch the common law distinction between murder and manslaughter; it simply divides murder into two classes: murder with specific, deliberate intent to take life being murder in the first degree; murder without such an intent to take life being murder in the second degree. Whart. Hom. section 177.

In all the enumerated cases in section 1 of chapter 144 of the Code, *supra,* "the legislature has declared the law, that the perpetrator shall be held guilty of murder in the first degree, *without further proof* that *the death* was the ultimate result, which the will, deliberation and premeditation of the party accused sought. And the same authority has declared the law, that any other kind of killing, which is sought by the will, deliberation and premeditation of the party accused, shall also be murder in the first degree; but that, as to this other kind of killing, proof must be adduced to satisfy the mind, that the death of the party slain was the ultimate result which the concurring will, deliberation and premeditation, of the party accused, sought. But to this general rule the same authority adds an exception, which is, that any death consequent upon the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder in the first degree; and all other murder at common law, shall be deemed murder in the second degree. So that the cases within the exception, as now put, and the casses enumerated as first mentioned, are, in fact, placed upon the same principle: there is no necessity of proof in either, to establish the fact that a homicide was intended. And it follows, of course, that all other homicide which was murder at common law, is now murder in the second degree, except when it shall be proved that the homicide was the result of a 'willful, deliberate and premeditated killing;' and it also follows, of necessity, that

when by the proof the mind is satisfied that the killing was wilful, deliberate and premeditated, such killing must be taken and held to be murder in the *first* degree. This construction of the act of assembly is consistent with, and supported by the decision of this Court, in *Burgess's Case,* 2 Va. *Ca.* 483, and *Whileford's Case,* 6 Rand. 721." *Jones' Case,* 1 Leigh 611, 612.

"By the general concurrence of each of the states in which this distinction has been the subject of examination, the pratical working of the statutes has been to divide murder, as limited by the common law, into two classes, leaving the original boundaries between murder and manslaughter unaltered. The statutes, it has been held, in requiring murder in the first degree to be deliberate, do not change the common law doctrine in that respect with regard to murder; the degree of deliberation requisite in both degrees being the same. The distinctive peculiarity attached by the statute to murder in the first degree, however, is that it must necessarily be accompanied with a premeditated intention to take life. The *'killing'* must be *premeditated.''* Wherever, then, in cases of deliberate homicide, there is a specific intention to take life, the offense, if consummated, is murder in the first degree; if there is not a specific intetion to take life, it is murder in the second degree. "To constitute murder of the first degree, the intent of the party killing must have been to take life; whereas, by the common law, if the mortal blow is malicious and death ensues, the perpetrator is guilty of murder, whether such an intention does or does not appear to have existed in his mind. The injury being malicious, the common law holds the offender responsible for all the consequences following his unlawful act." Whar. Hom. section 177.

By the evidence, no positive intent on the part of the defendant to take the life of Palmer is shown. Such intent could only be proved by Dodds himself; but he could not be compelled to testify against himself. Hence, under the law, the jury had the right to infer or presume that fact, from the manner, means and circumstances of the homicide, as shown by the evidence. The defendant had the right to introduce evidence, if he could produce such, to rebut or overthrow that inference or presumption. If not overthrown by the defendant, or by the evidence and circumstances given by the State, the presumption

aforesaid may be taken as sufficient evidence of specific intent to kill. The language used in the instruction is, in purport and effect, the same as the words, *"prima facie* guilty," employed in the *Cain Case, supra.*

A *prima facie* case is one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side. *"Prima facie* evidence of a fact is such evidence as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose." *Kelly* v. *Jackson,* 6 Pct. (U. S.) 622.

The instruction, therefore, is not bad because of the phraseology thereof. The jury evidently did not presume the specific intent of the defendant to kill the deceased, because they found the defendant not guilty of murder in the first, but guilty of murder in the second degree. But admitting the instruction to be faulty, the defendant was not prejudiced thereby. *State* v. *Morrison,* 49 W. Va. 210.

Instruction No. 3, given on behalf of the defendant, does explain to the jury how the grade of the alleged offense may be reduced and found by them to be voluntary manslaughter; and No. 2 states facts which, if proved to the satisfaction of the jury, would justify a finding by them for involuntary manslaughter, or assault and battery. Reading together, instructions No. 1, given on motion of the state, and Nos. 2 and 3 for the defendant, we find no error therein. Althought an instruction, considered by itself, is too general, yet, if it is properly limited by others given on the other side, so that it is not probable it could have misled the jury, judgment will not be reversed on account of such instruction. Sackett's Instr. section 23. The other instructions, given by the court, state the law correctly, and were properly allowed.

Instructions Nos. 4, 5 and 6, offered by the defendant and refused by the court, each single out, and give undue prominence to, particular offenses and ignore others charged in the indictment. The question has been so often passed upon, and such instructions have been so repeatedly condemned by this Court, that it is scarcely necessary to here again decide it. *Price* v. *C. & O. R. R. Co.,* 46 W. Va. 538, and cases there cited. "An instruction which singles out and gives undue prominence to certain facts, ignoring other facts, proved and of equal im-

portance in a proper determination of the case, is improper." Sackett's Instr. section 13. In rejecting said instructions 4, 5 and 6 offered by the defendant, the court did not err.

We think the facts and circumstances of the case warrant the verdict of the jury, and judgment of the court thereon. We find no error in the record to the prejudice of the defendant. The judgment of the criminal court, therefore, must be affirmed.

*Affirmed.*  ·