# CHARLESTON:

STATE *v.* HERTZOG.

Submitted January 26, 1904.    Decided February 23, 1904.

1.  INSTRUCTIONS—*Error.*

Upon the trial of H. for murder, the court gave the jury the following instruction: The court instructs the jury that a man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act. And if the jury believe from the evidence that H. with a deadly weapon in his possession, without any or upon very slight provocation, gave to R. a mortal wound, the said H. is *prima facie* guilty of willful, deliberate and premeditated killing; and the necessity rests upon H. of showing extenuating circumstances, as they appear from the case made by the State, H. is guilty of

murder in the first degree. *Held:* That the giving of said instruction was error. (p. 80).

2. MURDER—*Criminal Law.*

Where a statute establishes degrees of the crime of murder, and provides that all willful, deliberate and premeditated killing, shall be murder in the first degree, evidence that the accused was intoxicated at the time of the killing, is competent for the consideration of the jury, upon the question whether the accused was in such condition of mind as to be capable of deliberation and premeditation. (p. 83).

3. INSTRUCTIONS.

It is not error to refuse an instruction, not especially adapted to, nor based upon, the facts of the case, which the evidence fairly tends to prove. (p. 85).

Error to Circuit Court, Taylor County.

Grant G. Hertzog was convicted of murder, and brings error.

*Reversed.*

J. G. ST. CLAIR and C. P. GUARD, for plaintiff in error.

B. F. BAILEY, and ATTORNEY GENERAL, for the State.

MILLER, JUDGE:

The plaintiff in error, Grant P. Hertzog, was indicted by the Grand Jury of the Circuit Court of Taylor County, at a term of said court, held on the 13th day of April, 1903, for the murder of John Russell. The indictment is in the form prescribed by section 2 of chapter 144 of the Code, and is sufficient on demurrer. *State* v. *Douglass,* 41 W. Va. 537; *State* v. *Dodds,* 46 S. E. 228. At the same term the defendant demurred to the indictment, and the demurrer was overruled. A jury was then empaneled; a trial of the defendant was had, and a verdict of guilty of murder in the first degree was found against the defendant, who was thereupon sentenced to be hanged by the neck until dead; and the time of his execution was fixed for the 3rd day of July, 1903. A Judge of this Court granted Hertzog a writ of error to said judgment.

During his trial, the defendant excepted to various rulings of the court; and here assigns for error, that he was prejudiced by certain instructions given to the jury by the court, at the in-

stance of the State; by the refusal of the court to give certain other instructions, asked for by him; and because the court refused to set aside the verdict, on the ground that the same was contrary to the law and the evidence. All the matters aforesaid, complained of by the defendant, are made parts of the record by proper bills of exception.

Both the defendant and the deceased, at the time of the homicide, resided at or near Simpson, a small mining town in Taylor County, and were employed at that place by the Grafton Coal & Coke Company. Russell was a coal miner, and Hertzog was the driver of a horse or mule in the same mines. Defendant and deceased had known each other for about three years, had been friendly and associated much together, during that time. Both of them were addicted to the use of intoxicating liquors. It is proved by several witnesses that Hertzog had been accustomed to drinking, for a time long prior to the homicide; and that, at times when drinking, he did not seem to know his wife from any other person; or to understand what he was then doing. The homicide occurred on Sunday, February 1, 1903, about four or five o'clock, P. M. It appears that Hertzog and Russell had been drinking together, prior to that date, and that defendant had been drinking for two or three weeks, next before that time. It is also shown that Hertzog and others had an eight gallon keg of beer, the night before the killing; that next morning, there was about a half-gallon of the beer left, which defendant drank. It is shown that he also drank whiskey that morning; that about ten o'clock, on that morning, Hertzog came into the small store or shop of V. L. Davis at Simpson; that he saw Russell there, and hit him on the head with his hand; that they then scuffled a little, but this does not appear, from the circumstances, to have been anything more than the result of too much drink. Hertzog then took the train for Grafton, saying to Russell; to meet him there on his return. It appears that Hertzog and others, who went with him, got whiskey in Grafton; that he was under the influence of liquor at Grafton; that he and those with him came back to Simpson on the train about 3 P. M., bringing whiskey with them; that he went to the home of his mother-in-law while at Grafton, and ate dinner, and took away with him, from there, a small breech-loading rifle, belonging to him, for the purpose, as he said, of having

Mr. Lilly, a gunsmith, to bore it out; that he afterwards saw Mr. Lilly who said that he could not then do the work; but would fix the gun some other day; that it was then about train time; that defendant did not then have sufficient time to take the gun back to the house of his mother-in-law before the train would leave Grafton for Simpson; and that he took the gun with him to Simpson. William Lilly, referred to, testified that he saw defendant in Grafton; that defendant had a target gun with him, the barrel thereof being from ten to twelve inches long with a little wire handle; that defendant wanted him to make it shoot "a 22 long, instead of a 22 short;" that he did not then fix the gun, but told Hertzog that he would fix it some day, if Hertzog would bring it to him. Mrs. Weekley, the mother-in-law of defendant, testified that Hertzog had the gun at her house; that he, on the Sunday referred to come there; was drinking at the time; took some dinner; that the gun was hanging up in the rack in the house; that defendant said, "I believe I will take my gun home with me, and get it fixed;" and that he took it away with him. On the return of said defendant to Simpson, he was met at the railroad platform by Russell and others. Defendant, Russell and others, then went down the railroad track together. Defendant had some whiskey, and a Mr. Seamon had a quart. Defendant says that they drank it. After they drank this whiskey, defendant and Russell started along the railroad track in the direction of their homes, accompanied by some other persons. They stopped some distance from the platform, and engaged at target shooting with the gun. Afterwards, a witness saw them coming up along and near the track in a meadow, acting "Just like us boys used to play leap frog." This was in the meadow of C. C. Curry, who swears that he first heard Hertzog asking Russell to go home with him, but Russell did not want to go; "that they were down off the track, in my meadow; that they had hold of each other like two boys, playing. * * * I heard Hertzog say, I'll shoot you. * * * He released Russell, and went on the track, took up the gun, and cut away at Russell. Russell was down in the meadow and Hertzog was on the track. He shot just as he took aim." Witness further says, "Russell never fell or hollowed. He just kept walking around and around, and Hertzog stood on the track. Then Hertzog laid the gun

down; went down and got hold of Russell." Witness says that, after some time, Hertzog said to Russell again, "I will shoot you;" that he got the gun the second time and took up the track, and Mr. Russell walked up the meadow; and he (Hertzog) shot at him (Russell), and he never fell or hollowed again. When this shot was fired the parties were about fifty feet apart. It was fifteen or twenty minutes after the first shot. It is further shown that Hertzog re-loaded his gun, and that Russell got upon the railroad track, and sat down there; where he sat for fifteen or twenty minutes; that Hertzog, in the meantime, had come up to within seven or ten feet of Russell, and then said, "damn you I am going to kill you;" that Russell begged him not to do so; drew his hand above his head, and attempted to get up, when Hertzog shot him again; and that Russell fell and never moved. Witness says, that Hertzog then put a load in his gun; laid it down on the track; walked up and took Russell by the collar, and pulled it open to see where he had shot him. It is shown that Hertzog, as soon as he realized the fact of the killing, and at other times soon thereafter, said that he had killed his best friend. There were several other persons near the place when the shooting occurred who testified on the trial, and whose evidence differs, in some respects, from that of Curry, but not as to the main fact. The gun used by Hertzog appears to have been the one brought by him from Grafton on that day. Some of the witnesses say that, after the shooting, Hertzog impressed them as being drunk; Mrs. Hertzog says that he came home drunk that evening; and he swears that he remembered nothing after drinking with Russell and others near Simpson, until the next morning, when he was in jail at Grafton.

Dr. Ellis, who performed the autopsy on the remains of Russell, says that he found a furrowed wound on Russell's right leg just above the knee; another in the groin on the left side, and another in the region of the chest, on the left side, where the collar bone couples on to the breast bone; and that the death of Russell was caused by the said gun shot wound. He found the bullet. It was about 20-100 of an inch bullet. It is not necessary to give more of the evidence. No opinion is expressed as to what it proves. The above facts are stated in order that a

fair understanding of the instructions, given and refused by the court, may be had.

The court, at the instance of the State, gave to the jury the following instructions:

"1. The court instructs the jury that a man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act; and if the jury believe from the evidence that Grant G. Hertzog with a deadly weapon in his possession, without any or upon very slight provocation, gave to *Joh* Russell a mortal wound, the said Grant G. Hertzog is *prima facie* guilty of wilful, deliberate and premeditated killing; and the necessity rests upon Grant G. Hertzog of showing extenuating circumstances, as they appear from the case made by the State, Grant G. Hertzog is guilty of murder in the first degree."

"2. The court instructs the jury that if they believe from the evidence that the prisoner, Grant G. Hertzog willfully, maliciously, deliberately, and premediatedly *kiled* John Russell, the deceased, they should find the said Grant G. Hertzog guilty of murder in the first degree, although he was intoxicated at the time of the killing."

"3. The court instructs the jury that Grant G. Hertzog, the prisoner at the bar, whether he be a habitual drinker or not, cannot voluntarily make himself so drunk as to become on that account irresponsible for his conduct during such drunkenness. He may be perfectly *uncincious* of the killing of John Russell, and yet he is responsible. He may be incapable of express malice, but the court instructs the jury that the law implies malice in such a case from the *weopen* used, the absence of provocation, and other circumstances under which the act is done."

To the giving of said instructions, and each of them, the defendant excepted.

Instruction No. 1 is taken from point 11 of the syllabus in the case of *State* v. *Cain,* 20 W. Va. 681, but it omits a very material and essential part of the instruction in that case. The law is as stated in that case that "A man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act; and if the prisoner with a deadly weapon in his possession without any or upon very slight provocation gives to another a mortal wound, the prisoner is *prima facie*

guilty of wilful, deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder in the first degree."

It will be observed that the said instruction No. 1, after saying to the jury that the necessity rests on Grant G. Hertzog of showing extenuating circumstances, omits the words, *"and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State,"* he is guilty of murder in the first degree.

Murder by poison, lying in wait, imprisonment, starving, or *any wilful, deliberate, and premeditated killing,* or in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree. Code, chapter 144, section 1.

In *State* v. *Cain, supra,* and in other cases herein cited, it is held that where a homicide is proved, the presumption is, that it is murder in the second degree. It is *prima facie* attended with malice, which enters into murder as one of its ingredients. If the State would elevate it to murder in the first degree, she must establish the characteristics of that crime; and if the prisoner would reduce it to manslaughter, the burden of proof rests upon him. *State* v. *Welch,* 36 W. Va. 690; *State* v. *Dodds,* 46 S. E. 228, 231; *Hill's Case,* 2 Grat. 595.

The distinctive element in wilful, deliberate, and premeditated murder, not in murder of the second degree, is the *specific intention to take life.* Wherever, therefore, in a case of deliberate homicide, there is a specific intention to take life, the offense, if consummated, is murder in the first degree; but if there be no specific intention to take life, it is murder in the second degree. The question whether a particular homicide is murder in the first or second degree is one of fact for the jury. *Welch's Case, supra.*

Instruction No. 1 is not only faulty by reason of the omission pointed out therein, but the court thereby instructs the jury that Grant G. Hertzog is guilty of murder in the first degree. We think the jury could not, and did not, understand the language of the instruction in any other sense. Fairly construed, the instruction has no other meaning. If it be proved

that the defendant, with a deadly weapon in his possession, without any or upon slight provocation, gave to the deceased a mortal wound, the defendant is *prima facie* guilty of wilful, deliberate and premeditated murder, because a person is presumed to intend that which is the immediate or necessary consequence of his act. The killing by the defendant with a deadly weapon in his possession without any, or upon very slight, provocation, being proved, the jury may presume, or accept, it as *prima facie* true; that the act of the defendant was wilful, deliberate and premeditated; and therefore that the defendant had at the time the specific intention to take life; but this presumption is always rebuttable. As stated above, the degree of murder is always a question of fact to be found by the jury, upon facts proved, and presumed from the other facts established in the case. The court, therefore, erred in giving instruction No. 1.

What has been said concerning the specific intent of the accused, at the time of the homicide, to take life, is applicable to the said instructions Nos. 2 and 3. It is shown by the evidence that the defendant was, at the time, and for some time previous to the homicide, had been, under the influence of intoxicating liquors.

McClain on Crim. L. Vol. I., s. 151, says: "As has already been explained, some crimes consist not merely in the committing of a criminal act and the criminal intent inferred therefrom, but in whole or in part in the *specific intent* with which the act is done; and in such cases, it is a well established doctrine that intoxication may be shown for the purpose of negativing the existence of such specific intent by showing that the accused was at the time of committing the act charged, incapable of entertaining the intent which is relied on as constituting or increasing the criminality of such act."

Bishop's Crim. Law Vol. I, s. 409, states: "We have seen that intoxication does not incapacitate one to commit the common law murder or manslaughter; because, to constitute either, the specific intent to take life need not exist,—general malevolence sufficing. But where murder is divided by statute into two degrees, and to constitute it in the first degree, there must be the specific intent to take life, if by reason of being too deeply intoxicated, the accused person could not have had, so did not

have, this specific intent, the murder is not in the first degree."

In *State* v. *Robinson,* 20 W. Va. 740, JUDGE JOHNSON, who delivered the opinion of the Court, says: "After having carefully reviewed the authorities cited by the learned counsel for both the State and the prisoner, it seems to us, that there is very little conflict to be found. The court under such circumstances must have steadily in view two objects, the safety of society and justice to the accused. We think we are fully authorized under the authorities to say, that drunkenness is no excuse for crime; at common law the implied malice from his act would doom him to the scaffold, although he was too drunk, when he committed the deed, to harbor express malice. Now the only change made in the stringent rule of the common law is, that where under a statute, in order to constitute murder in the first degree, deliberation and premeditation are required, upon the question of whether there was on the part of the prisoner deliberation and premeditation, the jury may consider the fact, that he was intoxicated at the time of the killing. The change goes no further. Upon the question of whether the prisoner is guilty of murder in the second degree or manslaughter, the jury are not permitted to consider the drunkenness of the prisoner at all. * * * A person, who is intoxicated, may yet be capable of deliberation and premeditation; and if the jury believe from all the evidence in the case, that the prisoner wilfully, maliciosuly, deliberately and premeditatedly killed the deceased, they should find him guilty of murder in the first degree, although he was intoxicated at the time of the killing. * * * A person, whether he be an habitual drinker or not, cannot, voluntarily make himself so drunk, as to become on that account irresponsible for his conduct during such drunkenness. He may be perfectly unconscious of what he does, and yet he is responsible. He may be incapable of express malice, but the law implies malice in such a case from the nature of the instrument and the absence of provocation and other circumstances, under which the act, is done. * * * Where a statute establishes degrees of the crime of murder and provides, that 'all wilful, deliberate and premeditated killing shall be murder in the first degree,' evidence, that the accused was intoxicated at the time of the killing, is competent for the consideration of the jury upon the question, whether the accused

was in such a condition of mind as to be capable of deliberation and premeditation."

Instructions Nos. 2 and 3 are good as abstract principles of law, and were applicable to the facts proved in *Robinson's Case, supra,* but standing alone in this case, they in effect take from the consideration of the jury the evidence, given in the case, tending to prove the intoxication of the defendant at the time, and shortly before the homicide.    It is the object and office of instructions to define for the jury, and to direct their attention to the legal principles which apply to, and govern, the facts, proved or presumed in the case.    The instructions should simply develop the rules of law, governing the particular facts,—all the facts—not a part only, which the evidence tends to establish; and they (the instructions) are to be interpreted, and judged of, not in any abstract way, but with reference to those facts.    *State* v. *Dodds, supra.*

The court should have also given to the jury in connection with Nos. 2 and 3 an instruction saying that "Where a statute establishes degrees of the crime of murder, and provides that all wilful, deliberate and premeditated killing shall be murder in the first degree, the evidence given on the trial tending to prove that the accused was intoxicated at the time of the killing, is competent for the consideration of the jury upon the question, whether the accused was in such a condition of mind as to be capable of deliberation and premeditation."

Failing to do this, it was error in the court to give instructions Nos. 2 and 3.

The defendant asked the court to give to the jury the following instructions:

"5.    The court instructs the jury that if they believe from the evidence that the killing of John Russell by the defendant Grant G. Hertzog, was the result of a sudden provocation or sudden *quarrell* without malice prepense, then the killing is manslaughter."

"10.    The court instructs the jury that before they can find the defendant Grant G. Hertzog guilty of the murder of John Russell, they must believe from the evidence beyond all reasonable doubt that the said Hertzog, was a man of sound sense at the time, and that he unlawfully killed the said Russell with malice aforethought."    But the court refused to give the said

last mentioned instructions, and each of them, to which action of the court, the defendant excepted.

There is no evidence in the record upon which said rejected instructions or either of them could be based.

It is not error to refuse an instruction not specially adapted to, nor based upon, the facts of the case, which the evidence fairly tends to prove. *State* v. *Belknap,* 39 W. Va. 427; *Kerr* v. *Lunsford,* 31 W. Va. 659; *Hutchinson* v. *Parkersburg,* 25 W. Va. 226. The court did not err in refusing the proposed instructions.

After the verdict was rendered as aforesaid, the defendant moved the court to set aside the same and to grant him a new trial, on the ground that said verdict was contrary to the law and the evidence, but the court overruled the motion, and the defendant again excepted.

For the errors committed by the court, as hereinbefore pointed out, the last mentioned motion should have been sustained; and for the several reasons stated, the verdict of the jury is set aside, and held for naught; the judgment of the court thereon is reversed and annulled; and a new trial upon the indictment aforesaid is awarded to the defendant.

*Reversed.*