# CHARLESTON.

MIDLAND INVESTMENT COMPANY *v.* RUFUS NELSON *et als.*

(No. 6422)

Submitted April 9, 1929.     Decided April 16, 1929.

*Love & Love,* for plaintiff in error.
*Dillon, Mahan & Holt,* for defendant in error.

LIVELY, JUDGE:

A verdict and judgment thereon for $502.76 against E. B. McGee in favor of Midland Investment Company was rendered on August 18, 1928, and he prosecutes error.

Plaintiff finances automobile dealers by purchasing negotiable notes taken by the dealers from the purchasers of cars, as well as notes taken under conditional sales. Rufus Nelson purchased a truck from Clemans Motor Car Company and executed to the latter a note for $500.00 dated October 13, 1925, which is the note sued on and which was sold to plaintiff and payment thereof unconditionally guaranteed by the Motor Car Company. The note was to be discharged in ten monthly payments with accrued interest, and if any installment payment was not made when due, then the entire amount of the note remaining unpaid became due. Nelson made the first payment and refused to pay further, claiming that the truck would not do the work for which it was purchased. Prior to the sale of the truck to Nelson the Clemans Motor Car Company, a partnership, was formed by Leroy Clemans and W. W. Hanshaw, who made an arrangement with the Midland for financing its business in the manner above indicated. A month or so after the Motor Car Company had operated, Clemans sold his interest to E. B. McGee and the Midland was so advised. Later, in January, 1925, McGee sold his interest in the partnership to Hanshaw, who continued the business under the original firm name. It will be observed that the note sued on was executed by Nelson to the Motor Car Company about nine months after McGee had sold his interest in the Motor Car Company. McGee had, in fact, no interest in the Motor Car Company at the time the note was transferred and payment guaranteed to the Midland. He pleaded that fact. Midland replied that it had no notice that he had severed his connection with the Motor Car Company, and that the note was purchased by it on the assumption, well founded, that he was still a partner, and that credit was extended to the Motor Car Company solely because he was a member. This was one of the issues decided by the jury. Hanshaw and McGee both say they advised Bush, the manager of Midland, on July 13, 1925, that they were on a trade by which McGee would retire from the partnership, and they say they told him a day or so later that they would consummate the transaction that day, but did not tell him that they had actually done so. Bush admits that

they told him negotiations between them were pending, but denies that he was advised that they would close the negotiations, or had done so. On the other hand, he says that Hanshaw told him later, about July 1, 1925, that McGee still was a partner, and that he purchased their paper only because of McGee's responsibility as a partner. There is other evidence which tends to show that McGee and Hanshaw had advised Bush only of pending negotiations for the withdrawal of McGee from the firm, and that their remembrance that they had told Bush that their minds had met and that they would close the negotiations on a certain day, was an afterthought. The evidence as to whether Midland knew or should have known that McGee was not a partner at the time it purchased the note, was in sharp conflict, and presented a jury question. It is claimed, however, that the court took that question from the jury by instructing them as follows: "The court instructs the jury that notice that the partners were considering a dissolution, is not of itself notice of dissolution of the partnership." The claim is that this instruction ignores the evidence of McGee and Hanshaw that they later told Bush their minds had met and they would that day close the deal. The instruction complained of is abstract in form, but there is evidence to sustain it. The jury could not have been misled from considering the evidence of McGee and Hanshaw on this part of the case, for they were told by other instructions that if they believed that McGee had withdrawn from the partnership prior to the execution and purchase of the note sued on yet to excuse him from liability thereon they must further believe from the evidence that plaintiff knew that the partnership had been dissolved before the purchase of the note. Defendant's instruction No. 2 told the jury that if they believed Bush had been notified of the sale of McGee's interest in the partnership prior to the purchase of the note sued on, then they should find for McGee. Instructions must be considered together. *State* v. *Dodds*, 54 W. Va. 289, 46 S. E. 228; Sacketts Inst., sec. 23; *Showalter* v. *Chambers*, 77 W. Va. 720, 88 S. E. 1072. We find no error in the instructions.

The other points of error are encompassed in the assertion that the verdict is contrary to the law and evidence. It is argued (1) that no recovery could be had against Nelson or McGee until the Midland had sold the truck in conformity with the conditional sales law and accounted to the maker of the note for the proceeds; and (2) that there could be no liability on McGee (granting that he was a partner) as endorser or guarantor, because his liability was secondary to that of Nelson, the maker, and that the jury having found Nelson was not liable to plaintiff, the verdict against McGee, the endorser or guarantor, could not stand; therefore, it was error to refuse to set aside the verdict and grant McGee a new trial.

If there was a conditional sales contract between the Motor Car Company and Nelson for the truck, its terms do not appear in the record. No such contract was introduced in evidence, although it appears that a paper was in the hands of counsel for defendants McGee and Hanshaw which he intimated was a conditional sales contract. There is no evidence that such a contract accompanied the note when it was purchased or that Midland had notice of a conditional sale or its terms. It does appear, however, that after Nelson refused to pay for the truck on the ground that it would not do the work it was represented to do, Hanshaw repossessed it with the concurrence of Nelson and placed it in the garage of the Motor Car Company where it remained for several months, and it does not clearly appear what became of it. Whether he took it back under his conditional sales contract, if he had one, or because it was defective and no obligation rested on Nelson to pay for it, does not appear. What final disposition was made of the truck does not clearly appear. Hanshaw thinks it was sold about six months later at the same time other cars which belonged to Midland were sold (and which were on storage in his garage) and purchased by Midland. Bush did not know what became of it, and he says that Midland did not direct the truck to be repossessed, and did not know that it had been brought in, and that where cars are repossessed they go back to the dealer and belong to him.

Hanshaw attempted to testify that he repossessed the truck by direction of Midland, but this evidence was stricken out, and the court instructed the jury not to consider it. Under the evidence we can perceive no duty on plaintiff to repossess or sell the cars as required by the conditional sales law. It reasonably appears that the duty of repossessing and selling (if sold conditionally) in order to hold the purchaser for the residue as between the seller and purchaser, was the duty of the seller, the Motor Car Company. It is clearly shown that Hanshaw did repossess and kept the truck for several months, and he is not positive what became of it. If he delivered the car to Midland for sale after he had kept it for several months in full or part payment of the note, the payment of which his company guaranteed, the burden was on him to show that fact,. and what credit he should have. The burden of proving partial or full payment of an admitted obligation is on him who asserts payment.

On the other point, namely, that the verdict in favor of Nelson, the maker, automatically prevents a recovery against McGee, the endorser or guarantor, we cannot determine on what ground the jury excused Nelson from liability. His refusal to make further payment on the note was because the truck was of no value to him. It would not do his hauling. The jury may have concluded that Hanshaw representing the Motor Car Company took back the truck because it was defective and thereby released Nelson as the primary obligor on that note. Of course, that would not release him in so far as the plaintiff was concerned, but the plaintiff is not complaining of Nelson's release from liability to it. Take the other horn of the dilemma: If Hanshaw's company had a conditional sales contract with Nelson, as is intimated in the record, and took the car back under that contract, it became its duty to sell under the conditional sales law in order to hold Nelson in so far as it was concerned, and having failed to sell in the manner prescribed by law, it thereby released Nelson from obligation to it as maker of the note. Chapter 99-A, Code, amended by Acts, 1925, chapter 64. In either view Nelson has been released by Hanshaw's company from payment of the note so far as it is concerned, and a

judgment for plaintiff as a *bona fide* holder for value in due course against Nelson would entitle the latter (if he made payment thereof) to recourse on the Motor Car Company. But as stated above, plaintiff is not complaining. The Motor Car Company having released Nelson from obligation to it, we think it is estopped from complaining that a joint verdict and judgment was not rendered in favor of plaintiff against both of them.

It may not be amiss to observe that the Motor Car Company guaranteed payment of the negotiable note sued on in the following language found on its back: ''For value received, the undersigned hereby unconditionally guarantees payment of the within note, in all its terms and waives presentment and demand for payment, protest and notice of protest for non-payment, and consents that extensions of time of payment may be granted the maker without notice to, and without releasing the liability of the undersigned hereunder.'' It is argued that the Motor Car Company is not sued as a guarantor because in the notice of motion for judgment it is stated to be an endorser. The note itself is set out in *haec verba* as well as the guaranty on the back thereof as the instrument on which judgment will be demanded. That the pleader considered the Motor Car Company as an endorser does not control where the obligation itself is set out in full. Technical rules of pleading are not strictly applied to notice of motion for judgment. The instrument pleaded controls the status of the parties thereto; especially in an informal proceeding of this character. The question arises under this guaranty whether the obligation of the Motor Car Company is primary or secondary. Was it intended by the guarantor that it would not be liable until all remedy of the holder should be exhausted against Nelson, the maker? Was it intended to guarantee *solvency* of Nelson and ultimate payment after all means of enforcing payment from the maker had failed; or was it intended by this unqualified guaranty that the guarantor would pay upon default of Nelson without first exhausting all of the remedy against him? Generally, a contract of guaranty is collateral and secondary. But in every case the contract of guaranty must be construed by the terms

of the guaranty and the circumstances under which it was made. In this guaranty the Motor Car Company waives demand and notice, and unconditionally guarantees payment, both strongly indicating an intention to become primarily bound if default was made by the maker. *Arents* v. *Commonwealth*, 18 Grat. 770; *Loverine & Browne* v. *Bumgarner*, 59 W. Va. 46. However, under the view above expressed, and as the point is not raised by counsel, it is not necessary to pass upon the question of the Motor Company's primary or secondary liability under this guaranty. The question is mooted and not decided.

Perceiving no reversible error, the judgment will be
*Affirmed.*