ATLAS REALTY COMPANY *v.* M. W. MONROE *et al.*

(No. 8127)

Submitted May 1, 1935.  Decided June 3, 1935.

*McDougle & Hoff,* for plaintiffs in error.
*J. J. Yankiss,* for defendant in error.

HATCHER, JUDGE:

This action involves the right of a real estate company to recover commissions on a sale of property. From a judgment in favor of plaintiff, the defendants secured a writ of error.

One H. L. Ferguson informed an agent of the plaintiff that he was in the market for a suburban home and would pay as high as $6,000.00 cash. The agent procured an initial price

of $11,000.00 from defendant M. W. Monroe on his home, which is the property in question. The agent introduced Ferguson and his wife to the defendants and showed them over the Monroe home. The property suited the Fergusons, but not the price. Then over a period of months active negotiations were conducted by the agent between the Fergusons and the defendants during which the price of the property was reduced to $7,800.00 and the offer increased to $6,500.00. At this point, Monroe asked the agent what commission would be charged in case of sale, and was informed the commission would be five per cent of the sale price. Monroe said that was too high. The agent offered to charge a flat rate of $300.00. Monroe replied he would not pay that much. The agent then informed him he would be expected to pay five per cent commission if the property was sold to the Fergusons. Monroe answered that dealings between him and the agent were ended. A short time afterwards, Monroe agreed directly with Ferguson to take $6,800.00 cash. The deed was made to Ferguson's sister, Mrs. Kathryn Fox, who later conveyed to the Fergusons.

On the theory that the plaintiff never produced a purchaser willing to pay any of the several prices submitted to it by Monroe, I am very doubtful of plaintiff's legal right to maintain this action. My brethren take the view, however, that whether or not a brokerage contract, express or implied, was established between plaintiff and defendants and, if so, whether or not such contract was terminated by Monroe in good faith, are jury questions.

A number of instructions offered by each party, respectively, (plaintiff 16, and defendant 15) were rejected by the court, and in lieu thereof the court itself prepared and gave a charge to the jury. This charge was authorized by Code 1931, 56-6-19, but it contains some expressions which may have misled the jury. After stating that there was evidence tending to show that plaintiff undertook on behalf of defendants to sell their property at $11,000.00, the charge proceeds: ''Pursuant to this arrangement the broker produced as prospective purchasers Mr. and Mrs. Ferguson.'' The phrase ''pursuant to this arrangement'' would seem to imply

that the court treated the dealings between defendants and plaintiff as perfecting an arrangement, although that was one of the vital matters in issue. Again, in referring to the time that Monroe states he terminated all dealings with plaintiff's agent, the charge said: "At this time M. W. Monroe claims he discharged his broker by revoking his authority." That statement is unfortunate, as Monroe neither admitted that plaintiff was "his broker" or claimed to have discharged plaintiff "by revoking his authority." And finally, the charge told the jury if it believed "from the evidence that there was no contract, express or implied, or if there had been such contract and the same had been revoked by Monroe *and* the sale and conveyance to Kathryn Fox and her husband were not for the use and benefit of Mr. and Mrs. Ferguson then the jury should find for the defendants." (Italics ours.) The use of the "and" (italicized) is inept, because if the alleged contract had been *lawfully* revoked, the revocation constituted a complete defense without having to depend on a finding as to the conveyance to Mrs. Fox.

Furthermore, the statute directs the court to incorporate into the charge "the substance and, as far as may be, the language of the instructions prayed upon either side * * * with correctly propounded law applicable to the case." This direction must, of course, be given a reasonable construction. It cannot imply that the court should include in its charge the substance of every legal theory relating to remote phases of the case which the ingenuity of counsel can suggest. The statute cannot intend that the court must take a large number of instructions and compile therefrom a legal treatise during the stress of the trial. Such a compilation, even if complete, would likely confuse rather than enlighten the jury. The statute merely contemplates that the charge shall contain so much of the substance of the instructions tendered (and in their own language if practicable), as may be reasonably needful to inform the jury of the law applicable to the evidence. That is the whole purpose of instructing a jury, and the statute could design no more. *State* v. *Dodds,* 54 W. Va. 289, 46 S. E. 228. Some of defendant's instructions (fifteen) were improper. Some, however, contained pertinent legal

principles which were not sufficiently included in the charge, namely: instructions on the burden of proof (*Russell Lumber Co.* v. *Thompson & Lambert,* 137 Va. 386, 119 S. E. 117), on the credibility of the witnesses (*Gas Co.* v. *Wilson,* 70 W. Va. 157, 73 S. E. 306), and on the elements of a brokerage contract and of performance thereunder.

Because of the imperfections of the charge to the jury, the judgment is reversed, the verdict set aside, and a new trial awarded the defendants.

*Judgment reversed; verdict set aside; new trial awarded.*