## CHARLESTON.

State *v.* Albert Johnson

(No. 6565)

Submitted February 18, 1930. Decided February 25, 1930.

*Daugherty & Daugherty* and *Lilly, Lilly & Warwick,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

HATCHER, JUDGE:

The defendant, Albert Johnson, was indicted in the common pleas court of Cabell County for the murder of Frank Cyrus. He was found guilty of voluntary manslaughter and sentenced in that court.

The circumstances surrounding the tragedy from the standpoint of the state are that the deceased and the defendant had been having trouble for some time over a roadway; that on the morning of April 30, 1928, the defendant, his son and two brothers-in-law were working this road about one hundred and twenty-five feet from the home of deceased; that the deceased ordered them off, and thereupon defendant threatened to kill deceased if he came out into the road; that at noon the defendant armed himself with a .38 caliber automatic pistol and with his crew of men returned to the work; that the deceased advanced on them in the road, with a .22 caliber pump rifle (with which he was an expert marksman) and ordered one of them to leave; that the defendant then fired once at deceased and deceased discharged his rifle, but which one fired first is not known by the wife and daughter of the deceased, the state's only eye-witnesses of this part of the affair; that defendant then jumped up behind some bushes on the bank about seven feet above the road and at a distance of

15 or 20 feet from deceased fired two shots; that one of the defendant's three shots grazed deceased's left side, one penetrated his left arm entering the back of the forearm and passing through the upper arm also, and the other entered the top of his left shoulder ranging down and through his body to the right hip, inflicting the mortal wound; that at the time of the last shot deceased was leaning against the bank facing defendant; and that defendant then leaped into the road, seized the rifle, and beat deceased over the head with a broomstick. There was a contusion upon the left side, and several bruises upon the forehead and top of deceased's head.

The defendant and his kinsmen tell a different story. They say that the deceased threatened them in the morning and when he came up to them in the afternoon he had a broomstick, ordered them to leave, threatened to kill them, went back to his house and returned with the rifle which he pointed at one of the boys; defendant told him not to shoot the boy; deceased then fired three shots at the defendant who retreated to the bushes on the bank; deceased went back in his house but returned and fired another shot at defendant, who had again taken to the bank, and to this fourth shot, the defendant made his first reply with his pistol; each fired again and defendant then admonished the deceased: ''Frank if you don't stop, I'm going to have to hurt you''; deceased advanced and defendant jumped down in the road; deceased fired again at defendant who stooped down and thus avoided the bullet; as defendant arose he fired his pistol again, then tried to wrest the rifle from deceased; deceased then picked up the broomstick and hit defendant over the head, and defendant struck deceased once, only, upon the side of the head with his pistol, causing the weapon to accidently discharge the bullet which killed the deceased. Defendant made no effort to prove that the broomstick drew blood from his own head. The kinsmen of defendant fix the number of shots fired at the defendant by deceased at about seven.

However the killing may have occurred, the following physical facts discountenance the details as narrated by the defense: (a) while three discharged .38 caliber cartridge shells were found by officers of the law immediately after the trouble,

two on the bank and one in the side of the bank, none was found in the road; (b) only one empty .22 caliber shell was found in the road; (c) there was more than one wound upon deceased's head; (d) the defendant received no bullet wound, though the range was only fifteen to twenty feet and the deceased was a good shot with his rifle; and (e) the broomstick was bloodstained. Besides, there is no testimony of powder burns on the body or clothing of the deceased by the physician and others who examined the body.

The exact details of the occurrence, however, are not of vital importance to this decision. The entire record demonstrates that both the defendant and the deceased were at fault. No emergency is shown supporting either defendant's insistence on working the road at that particular time or deceased's opposition thereto. After the exchange of threats in the morning, neither party should have deliberately returned to the place where the quarrel would probably be resumed, yet each did so, armed for trouble. The law does not permit men to settle their differences by personal combat. The duel has been outlawed for more than a century. Since defendant is the survivor of this encounter he is the one upon whom the penalty of the law must fall.

Exceptions are taken to the admission of certain bits of testimony. This evidence was immaterial but harmless. Exceptions are also taken to several questions asked witnesses for defendant, to which objections were sustained. The record was not vouched. We do not know what the answers would have been, and cannot say whether the defendant was prejudiced. He protests the refusal of the following instructions: "The Court further instructs the jury that it is the duty of the State to give to the defendant in the opening argument of the case its theory or theories so that the defendant may be enabled to reply and that the jury cannot consider any theory of the State upon which it asks for a conviction not advanced or discussed in the opening argument of the case." The duty of the state is correctly stated in the instruction, but the manner of securing the performance of that duty is by motion to the court, and not by instruction to the jury. The instruction was properly refused.

Defendant also objects to the four instructions given for the state, on the ground that the evidence does not support the hypotheses of facts therein stated. There is doubt as to whether No. 2 was given, since it is marked refused, though certified as given by the trial judge. However, it, as well as the other instructions for the state, relate solely to murder in the first degree. By the verdict of manslaughter, the defendant was acquitted of murder. If there were errors in the state's instructions, those errors passed out of the case upon such acquittal. Defendant admits this to be the law where the jury is properly instructed as to the lesser offense, but contends it does not apply here because there was no instruction as to manslaughter, citing *State* v. *McMillion*, 104 W. Va. 1, 138 S. E. 732, and kindred decisions. The reference in those cases to instruction in the lower degree is merely one of fact, as they contain such instruction. They do not hold that instruction as to a lesser offense is a condition for the release of error in an instruction as to a higher offense, and we see no reason why it should be. The only office of an instruction is to aid the jury in arriving at a proper verdict. *Styles* v. *Chesapeake etc. R. Co.*, 62 W. Va. 650, 59 S. E. 609. Since the jury arrived at a verdict herein which is fully supported by the evidence, of what service to them an instruction? The defendant points out no way in which the instructions on murder influenced or conduced the verdict actually rendered. The jury must have completely rejected the hypotheses advanced in the state's instructions, otherwise they would have found him guilty as therein directed. A leading case on this subject is that of *Williams* v. *State*, 25 Tex. App. 76, 7 S. W. 661, which states the rule as follows: "Conviction for a lower grade of homicide than murder eliminates the law of murder from the case, and relieves this court of the duty of considering the charge of the trial court upon murder." The same rule is pronounced by the supreme court of North Carolina. "Upon the trial of a homicide, when a verdict of manslaughter has been rendered, a charge upon the law of murder in the second degree becomes immaterial." *State* v. *Messer*, 192 N. C. 80, 133 S. E. 404. For other decisions applying the rule in cases of homicide, see *Collins* v.

*Comm.,* 134 Va. 540, 113 S. E. 717; *Simpson* v. *State,* 12 Ga. App. 292, 77 S. E. 105; *State* v. *Clinton,* 278 Mo. 344, 213 S. W. 841. See also 17 C. J., p. 348, sec. 3705, (and the many cases in the notes), which recites no condition to the above rule, but states that it is well settled "that all errors inhering in the charge (to the jury) are eliminated by reason of an acquittal of the offense to which the charge pertains."

The judgment of the lower court is accordingly affirmed.

*Affirmed.*