STATE OF WEST VIRGINIA *v.* GENEVA STANLEY

(No. 7133)

Submitted March 29, 1932. Decided May 17, 1932.

*Dillon, Mahan & Holt,* for plaintiff in error.

*H. B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

LITZ, JUDGE:

Defendant, Geneva Stanley, was tried and convicted of murder in the second degree upon an indictment charging

her with the murder of her husband, Earnest E. Stanley, who died of gunshot wounds inflicted by her.

The tragedy occurred on the evening of May 4, 1931, at the Stanley home in Fayetteville, Fayette county. The Stanley family consisted of defendant, her husband, their two small children, a daughter, Alice by a former marriage, and Grover Davis, the husband of Alice. According to the evidence for defendant, her husband was under the influence of liquor when he came home for supper between six-thirty and seven o'clock; after she, he and their two small children had finished supper before Alice or Grover had eaten, Stanley began to dispose of all the food remaining to the cats. When defendant objected, he immediately became angry and began cursing and throwing dishes at her. The children ran from the kitchen to their room and Alice and Grover came into the living room from the front porch when they heard the disturbance. As Grover entered, Stanley addressed him in a hostile manner, and when defendant requested Stanley not to berate Grover, he became further enraged and snatched from her hands a dish she was drying and threw it on the floor at her feet. Stanley then stepped into the kitchen and slammed the door between the living room and kitchen. He then continued throwing missiles at her and becoming more enraged, declared: "I am going after that gun because there is no better time than right now to finish you." At this, she ran from the kitchen along a back porch to the bed room where the revolver was lying on top of a chiffonier near the entrance. Stanley, after throwing missiles at her as she left the kitchen, came through the house to the bed room, but she reached the gun before he could get to it; and thinking that he would pursue her, she retraced her steps to the kitchen intending to pass into the children's bed room where Alice and Grover had gone to quiet them; but upon entering the kitchen she was confronted by Stanley, who picked up an iron poker from the stove and advanced toward her in a threatening manner. She thereupon began to retreat toward the kitchen door telling him to stop, and when he had advanced within reach of her she fired three shots. Mrs. W. E. Tony, a neighbor and chief witness for the state, testified

that she heard Mrs. Stanley screaming and later saw her run from the kitchen, followed by missiles, along the back porch to the bed room; and after returning to the kitchen, heard her say: "I am going to shoot you; yes, I will shoot you", before the shots were fired; and immediately after, she again ran from the kitchen, pursued by Stanley.

Defendant, relying upon self-defense, assigns error to the rulings of the circuit court (1) in excluding evidence, offered by her, of (a) her affection for the deceased, (b) previous assaults by him upon her, (c) why the pistol with which she shot him was kept about the home, (d) a statement by her soon after the shooting, tending to justify her action; (2) in granting state's instructions 2, 4, 5, 7 and 8; and (3) in refusing her instructions 8 and 12.

The state introduced evidence of previous threats of defendant against her husband. She then offered evidence to prove her affection for him, which was improperly excluded. "Evidence tending to show friendly relations existing between one charged with homicide and his victim is admissible to rebut the element of malice, and it is error to refuse to allow it to go to the jury." *State* v. *Long*, 88 W. Va. 669, 108 S. E. 279.

The rejection of evidence, offered by defendant, of previous assaults by deceased upon her was also erroneous. *State* v. *Hardin*, 91 W. Va. 149, 112 S. E. 401; *State* v. *Johnson*, 107 W. Va. 216, 148 S. E. 4. In the latter case, a woman was tried for killing a man with whom she sustained illicit relations. After adducing evidence of self-defense, she offered proof of previous assaults by him upon her which was rejected. Reversing the judgment of conviction, this Court, speaking through Judge Lively, said: "There can be but little doubt that evidence as to previous assaults made upon this same defendant, even though they may have antedated the killing by three weeks to five months, and even though the parties may have lived together after the assaults took place, was admissible to show the state of feeling or relations existing between the deceased and the defendant, and as bearing upon whether the latter was justified in believing her life to be in imminent danger when she fired the fatal shot."

The pistol with which the defendant shot her husband had been kept around the home because (as she and other members of her family testified), of nightly prowlers in the neighborhood of the Stanley home. The testimony of neighbors, in her behalf, that nightly prowlers had infested the community, was excluded. This evidence, in our opinion, was proper in view of testimony for the state that defendant had said she was keeping the pistol to make her husband "walk the chalk".

A self-serving statement made by the defendant to a neighbor after the shooting (not appearing to have been a part of the res gestae) was properly excluded.

State's instructions 2 and 3, given upon the theory of murder in the first degree, may be treated as harmless since the verdict is of a lesser degree. "Where a conviction for a lower degree of an offense is sustained by the evidence, an instruction on .a higher degree, though erroneous, is immaterial." *State* v. *Johnson,* 108 W. Va. 630, 148 S. E. 4. State's instruction 5 is .wrong in assuming that there is evidence of a mutual combat between defendant and deceased immediately preceding the shooting. She is not shown to have been guilty of any fault before that time. State's instructions 7 and 8, which present the theories that all homicides are presumed to be murder in the second degree, and that malice to constitute murder may spring into the mind an instant before the killing, are purely abstract without any application to the evidence. This sort of instruction should be avoided.

Defendant's instructions Nos. 8 and 12, presenting applications of the presumption of innocence, are substantially covered by other instructions given on her behalf.

The judgment is reversed, verdict set aside and a new trial awarded.

*Reversed and remanded.*