STATE OF WEST VIRGINIA *v.* BERNARD E. BOWLES

(No. 8275)

Submitted February 25, 1936. Decided March 17, 1936.

*Claude L. Smith* and *S. P. Riddle,* for plaintiff in error.
*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

MAXWELL, JUDGE:

Bernard E. Bowles, convicted in the circuit court of Boone County of the murder in the second degree of Averil Sutphin and sentenced to penitentiary confinement of five years, prosecutes this writ of error.

Between eight and nine o'clock of the evening of September 8, 1934, Bowles shot Sutphin with a revolver in a confectionery in the village of Nellis, Boone County. Death resulted within probably less than five minutes.

Bowles, a constable, armed with a revolver, entered the confectionery a few minutes before the shot was fired. At the time of his entry the deceased was in the room, also several other persons. The number in the room was estimated to be from ten to twenty-five. Several of the patrons were seated at two small tables drinking beer. There was loud talking and laughter, but there is no evidence of exceeding boisterousness. The defendant testified that O. C. Lewis, proprietor of the confectionery, had asked him to come there.

Almost immediately after he entered the store room where the confectionery was conducted, the defendant went to a table at which were seated three young men, Gay Helmick, Corbett Nelson and Bill Hyles. The defendant said in substance to Helmick, "Gay, didn't I tell you to go home some time ago? About two hours ago?" He then told these three young men, or boys, to go home. This is not controverted, but the evidence is not clear as to whether at that moment there was an exchange of words between the defendant and the deceased. However, instantly following the defendant's admonition to the boys at the table, Dorsey Sutphin, an older brother of the deceased, inquired of defendant what right he had to come in there and interfere with the boys, and asserted that they were not doing anything wrong. Whether this inquiry of Dorsey's was accompanied by a vile epithet directed by him to the defendant, the evidence is in conflict. The defendant then placed his hand on Dorsey's shoulder and told him to consider himself under arrest, and, in response to Dorsey's inquiry as to

the reason therefor, told him that it was for interfering with an officer in the discharge of his official duty. Dorsey went then immediately to the counter, or fountain, at the rear of the room and bought a bottle of beer, which he there started to drink, and inquired of the proprietor, Lewis, whether the defendant had any right to come in there and interfere with patrons. While Dorsey was standing there the tragedy occurred between the defendant and the deceased. The evidence pertaining thereto is in conflict.

Witnesses for the state testified that the deceased, who was seated at the table other than the one at which the three named young men were seated, finished drinking a bottle of beer, placed the empty bottle on the table, arose to his feet, said to the defendant, in substance, "If you arrest my brother, you will take me, too," and started toward the door leading to the street or highway; that as he approached the door, empty-handed, the defendant, with his revolver in his hand, grabbed him; that in the ensuing tussle which took place practically in the doorway, the fatal shot was fired by the defendant while the deceased was leaning forward. They said that the defendant was dragging or pulling the deceased toward him.

The bullet entered the deceased's left cheek and ranged downward through the neck into the right side of the chest.

The defendant testified that after Dorsey Sutphin went to the counter for a bottle of beer, he (defendant) was fearful that Dorsey would attack him with a beer bottle, and therefore he backed toward the street door and stood there holding his revolver in his right hand and a large flashlight in his left; that he was not thinking about any trouble with the younger brother, the deceased. He proceeds: "So the first thing that I knew this boy they call Averil was right in my face, coming over-handed with a beer bottle, saying, 'God damn you.' I threw up my left arm like that (indicating) and my flashlight in my hand struck his wrist and the bottle flew out of his hand and hit the wall, or facing, or something or other, right above my head. Glass flew all over me, and he

come right on towards me and clinched me, and when he come into me and clinched me naturally I came up with this other hand to shove him back. * * * And when I come up with my right hand he grabbed me right square across the gun. He wrung my hand and turned his head side ways like that (indicating) and made a groaning noise all at the same time. The gun fired, and, gentlemen, how it was done I couldn't tell you."

The defense is accidental homicide.

Three or four witnesses for the state testified that the bottle which crashed near where the defendant was standing was thrown from about the middle of the room. One or two of the witnesses expressed the belief that it was thrown by Gay Helmick.

In respect of the defendant's challenge of the sufficiency of the evidence to sustain a verdict of second degree murder, we are of opinion that there was presented primarily a question for jury determination. If the jury had believed the defendant's testimony as to the manner of the shooting, he should have been acquitted of criminality, but, instead of being governed by his testimony, the jury saw fit to give credence to the testimony of witnesses presented by the state. This, of course, was their province.

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate, and that consequent injustice has been done. *State v. Sullivan*, 55 W. Va. 597, 47 S. E. 267; *State v. Donohoo*, 22 W. Va. 761; *State v. Bowyer*, 43 W. Va. 180, 27 S. E. 301; *State v. Burner*, 94 W. Va. 634, 119 S. E. 878.

Malice and intent could be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which they did not believe afforded him excuse,

justification or provocation for his conduct. *State* v. *Douglass,* 28 W. Va. 297; *State* v. *Panetta,* 85 W. Va. 212, 101 S. E. 360; *State v. Kellison,* 56 W. Va. 690, 47 S. E. 166; *State* v. *McMillion,* 104 W. Va. 1, 138 S. E. 732. This proposition was presented to the jury by the court in the sixth instruction tendered by the state. It not only told them that where a deadly weapon was used with fatal effect, without any or upon very slight provocation, intent, malice and willfulness may be inferred from the act, but, also, that deliberation and premeditation might likewise be inferred. Whether an instruction of that kind with reference to deliberation and premeditation is proper, depends on the circumstances of the case. Approving such instruction, are *State* v. *Medley,* 66 W. Va. 216, 66 S. E. 358, 18 Ann. Cas. 761; *State* v. *Tucker,* 52 W. Va. 420, 44 S. E. 427; *State* v. *Welch,* 36 W. Va. 690, 15 S. E. 419. Disapproving: *State* v. *Whitt,* 96 W. Va. 268, 122 S. E. 742; *State* v. *Coleman,* 96 W. Va. 544, 123 S. E. 580; *State* v. *Garner,* 97 W. Va. 222, 124 S. E. 681. The background of the case at bar would seem to classify it with the latter group. If so, it would follow that said instruction, in so far as it told the jury that they might infer premeditation and deliberation from the act of the defendant, was erroneous and should not have been given to the jury. This would probably have been prejudicial error had the verdict been for first degree murder, but, inasmuch as the verdict acquitted the defendant of murder in the first degree, thereby eliminating the elements of premeditation and deliberation, the error was not prejudicial. *State* v. *Johnson,* 108 W. Va. 630, 152 S. E. 203; *State v. Stanley,* 112 W. Va. 310, 164 S. E. 254.

Other than the overreaching in state's instruction No. 6, we perceive no error in any of the state's instructions. They are of stereotype form, ordinarily employed in the trial of murder cases. Of the twenty-four instructions tendered on behalf of the defendant, the court gave nine to the jury. These cover all essential elements of the defense, such as presumption of innocence, necessity of proof by the state beyond reasonable doubt to sustain a

conviction, a requirement of acquittal if the jury believed from the evidence that the shot was accidentally fired, necessity of the existence of malice to sustain a conviction of murder in either degree, the necessity of each juror's being convinced of guilt beyond reasonable doubt before there could be conviction of defendant under the charge of the indictment, and the sole responsibility of the jury with respect to the credibility of witnesses. Each defense instruction refused involved either a substantial repetition of a matter covered by an instruction which was given, or embraced an unsound proposition, excepting No. 19, which would have told the jury that if they believed from the evidence that the deceased was attempting to strike the defendant with a beer bottle and thereby caused him reasonably to believe that he was in grave danger, the jury could not convict him of murder in the first degree. This instruction presented a sound proposition, but, inasmuch as the jury acquitted the defendant of first degree murder, there was no prejudicial error in the refusal of the instruction. *State* v. *Frank Bowles*, 109 W. Va. 174, 153 S. E. 308.

The defendant urges that there was error in the court's action admitting in evidence, over defendant's protest, a diagram made by one of the undertakers who prepared the body of the deceased for burial. It is a drawing of the head and shoulders of a man, full face view. There is delineated the point of entry and course of the bullet. It is urged by the defendant that the admission of this picture tended to arouse the sympathy of the jury rather than to throw any real light on the case. The introduction of the picture may have been of doubtful propriety, but we would in no wise be warranted in holding as a matter of law that the jury was thereby prejudiced and that consequently, reversible error was injected into the trial. Jurors are reasonable men, and it is not to be presumed that their prejudices or passions are aroused by a free-hand drawing portraying the face and chest of a dead man (not purporting to be a likeness of the deceased), with a red dot indicating the point of entry

of the bullet in the cheek and a purple line denoting the direction of its course into the chest.

It is assigned as error that a state trooper, experienced in the use of small arms, who gave evidence as a witness for the defense, was not permitted to testify as to the manner in which the defendant's revolver could be fired. Whether his testimony in that particular would have been material, we are unable to determine because there was no avowal in the record by counsel as to what the witness would have testified had he been permitted.

It is also urged that the state overstepped its right in the introduction of evidence in rebuttal; that it therein introduced matters which should have been developed in chief. The rebuttal related mainly to the beer bottle which crashed near the defendant's head. Inasmuch as he had testified that the bottle was in the hand of the deceased, being used by him as a bludgeon, we think it was proper for the state in rebuttal to adduce testimony tending to show that the bottle was not in the possession of the deceased at the time of the fray, but that it was thrown by someone else in the room.

The entire record considered, we perceive no prejudicial error. Therefore, the judgment is affirmed.

*Affirmed.*