STATE OF WEST VIRGINIA

*v.*

THEODORE ROOSEVELT JOHNSON

(No. 10797)

Submitted September 18, 1956. Decided December 4, 1956.

*Clifford, Jones & White,* for plaintiff in error.

*John G. Fox,* Attorney General, *Arch W. Riley,* Assistant Attorney General, for defendant in error.

GIVEN, JUDGE:

Defendant, Theodore Roosevelt Johnson, was indicted by a grand jury of the Criminal Court of Harrison County, at the November, 1953, term thereof, for the murder of Robert Garrett. Defendant attacked the validity of the indictment by a plea in abatement, based on a contention that the grand jury which returned the indictment was not properly constituted, because not drawn from a grand jury list prepared as required by law. A demurrer

to the plea was sustained by the trial court. Upon a verdict of guilty of murder in the first degree, with recommendation that he be confined in the penitentiary, defendant was sentenced to confinement in the West Virginia State Penitentiary for the period of his life.

In the early morning of September 5, 1953, a Saturday, defendant, with members of his family, left his home in Jamestown, New York and drove, in his own automobile, to Fairmont, West Virginia, where he visited in the home of Hattie Hugger, a sister of his wife. About nine o'clock of that evening, accompanied by his wife and several other persons, he left Fairmont in his own automobile, then being driven by James Hooper, for Clarksburg, West Virginia, where he planned to attend a dance at Columbian Hall, on Water Street in Clarksburg. The party arrived at the hall shortly after ten o'clock and went directly to the dance. About midnight, defendant and others of his party left the dance hall. After defendant left the hall, he observed a fight between Hattie Hugger and James Hooper taking place on or near the walkway leading from the dance hall to a point near where his car was parked. After attempting to stop the fight, he demanded and received his automobile keys from James Hooper. A little later, defendant discovered that he had lost his automobile keys. While trying to find them, apparently by feeling in the grass along the walkway, according to his own testimony, he "heard a sound like somebody threw a brick against the building". According to the State's contention, however, it was during the time defendant was looking for his automobile keys that Robert Garrett walked up to defendant and said to him, "These your keys Mister?", at which time defendant reached for the keys with one hand, and with the other hand fired the shot which killed Garrett. Defendant testified that he was not acquainted with Garrett at the time of the shooting. There is no evidence that defendant had any previous trouble with Garrett. He denies firing the shot, and denies any knowledge thereof. The weapon used was never found. The keys to defendant's

automobile were later found near the place where the homicide occurred.

The principal, if not the controlling, contention of defendant is that the evidence is insufficient to support a verdict of first degree murder. The contention is based on the theory that the evidence is not sufficient to identify defendant as the person who fired the shot which killed Garrett, and that the State failed to prove malice or premeditation on the part of defendant. The contention necessitates a more detailed examination of the State's evidence relating to the killing.

Two witnesses, Willie Hines and Howard Hines, brothers, testifying on behalf of the State, gave testimony to the effect that defendant fired the shot that killed Garrett. Willie Hines, about thirty four years of age, attended the dance with his wife. He saw the fight, or at least a part thereof, between James Hooper and Hattie Hugger, and testified that "After he [defendant] spoke about his keys he started looking for them on the ground and this boy [Garrett] walked up from the left hand side and said, 'These your keys Mister?' "; and that defendant answered "yes" and then "shot Garrett and he buckled down". The witness was then asked: "After the shot was fired what, if anything, did Robert Garrett do?" He replied: "He said, 'Oh', made a pass to grab his chest but he fell before his hand got up to his chest". On cross-examination, this witness, after repeating in effect what Garrett had said regarding the keys, was asked: "And without more ado you say this man [defendant] jumped up and grabbed the keys and Johnson shot him?" He answered: "That is right". An attempt was made by defendant, on cross-examination of this witness, to show that there was very little light at the point of the shooting, and that the witness had little or no opportunity to recognize the person who shot Garrett. The witness testified positively, however, of Johnson, that "I saw his face after he shot and just before he ran".

Howard Hines, about thirty years of age, who also

attended the dance, about midnight saw the fight between James Hooper and Hattie Hugger. He testified to the effect that he observed Johnson "feeling along in the grass" for his keys; that Garrett "had something in his hands and he says 'Is this your keys?'"; and that Johnson "reached across and got them and he shot when the boy had them out or something in his hands. I would say it was his keys". The statements of the witness on cross-examination were to the same general effect. Apparently, neither Willie Hines nor Howard Hines was acquainted with defendant prior to the homicide. They were acquainted with Garrett. Other witnesses testified to the effect that Johnson was present at the dance.

The plea in abatement, challenging the validity of the indictment on the ground that the grand jury list, from which the grand jury returning the indictment was drawn, was improperly and illegally constituted, so as to render the indictment invalid, is based on the same facts alleged in the plea in abatement considered in *State* v. *Carduff*, 142 W. Va. 18, 93 S. E. 2d 502. The questions raised were settled by the decision and judgment in that case and need not be further considered here.

Defendant contends that the evidence is insufficient to sustain the verdict of the jury, for the reason that it does not identify defendant as the person who fired the shot and does not establish malice, deliberation or premeditation on the part of defendant. In *State* v. *Bowles*, 117 W. Va. 217, 185 S. E. 205, this Court held: "2. In a homicide trial, malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct. Whether premeditation and deliberation may likewise be inferred, depends upon the circumstances of the case." In *State* v. *Medley*, 66 W. Va. 216, 66 S. E. 358, 18 Ann. Cas. 761, this Court approved the giving to the jury an instruction which read: "If they believe from the evidence in the case that the accused was guilty of shoot-

ing the deceased with a deadly weapon and killing him the intent, the malice and wilful deliberation and premeditation may be inferred from the act". *State* v. *Tucker*, 52 W. Va. 420, 44 S. E. 427; *State* v. *Welch*, 36 W. Va. 690, 15 S. E. 419. We should point out, however, that it is not proper to give such an instruction in the circumstances of every case where malice and premeditation are involved. See *State* v. *Whitt*, 129 W. Va. 187, 40 S. E. 2d 319; *State* v. *Garner*, 97 W. Va. 222, 124 S. E. 681; *State* v. *Coleman*, 96 W. Va. 544, 123 S. E. 580; *State* v. *Whitt*, 96 W. Va. 268, 122 S. E. 742.

The testimony of Willie Hines and Howard Hines is positive in nature, and definitely identifies defendant as the person who fired the shot which killed Garrett, Willie Hines testifying that defendant was "about three feet in front" of him when the shot was fired; that he "recognized the gun because it fired"; and that he saw part of the muzzle of the gun. A jury is not, of course, required to believe evidence which is wholly incredible. See *Raines* v. *Faulkner*, 131 W. Va. 10, 48 S. E. 2d 393; *Browning* v. *Monongahela Transport Company*, 126 W. Va. 195, 27 S. E. 2d 481; *Miller* v. *The Blue Ridge Transportation Co.*, 123 W. Va. 428, 15 S. E. 2d 400. We see nothing, however, which renders the evidence of the State incredible. True, it may be argued that the witness had little opportunity to identify defendant as the person who fired the shot, because of lack of opportunity to observe his features in the semi-darkness, or because of the quickness of the happening of the homicide, or that the jury could have disregarded the testimony of the witnesses because of differences in certain contradictory statements in the testimony of some of the State's witnesses, but such facts could have been, and no doubt were, considered by the jurors in their determination of the truth or falsity of defendant's evidence. They do not, however, render evidence of the witnesses unbelievable or incredible. In such circumstances, the credibility of witnesses—the truth or falsity of testimony given, is a question peculiarly for jury determination. See *Show* v.

*Mount Vernon Farm Dairy Products,* 125 W. Va. 116, 23 S. E. 2d 68; *Denoff* v. *Fama,* 102 W. Va. 494, 135 S. E. 578; *State* v. *Owens,* 96 W. Va. 308, 122 S. E. 909; *State ex rel. Pierce* v. *Williams,* 95 W. Va. 218, 120 S. E. 594.

Since the jury did believe the State's evidence as to the shooting of Garrett by defendant, in the circumstances detailed, there can be no serious question as to the right of the jury to find the existence of malice, deliberation and premeditation on the part of defendant. That evidence would establish that defendant approached Garrett with gun in hand, ready to commit the very crime for which he was indicted, murder, and that he did shoot Garrett, with brutal disregard of consequences. That there was sufficient time, after Garrett spoke to defendant about the keys, for defendant to have formed malice, and to have deliberated, can not be doubted. See *State* v. *Morris,* 142 W. Va. 303, 95 S. E. 2d 401, decided this term; *State* v. *Burdette,* 135 W. Va. 312, 63 S. E. 2d 69; *State* v. *Dean,* 134 W. Va. 257, 58 S. E. 2d 860; *State* v. *Boggs,* 129 W. Va. 603, 42 S. E. 2d 1; *State* v. *Bowles,* 117 W. Va. 217, 185 S. E. 205; *State* v. *Worley,* 82 W. Va. 350, 96 S. E. 56; *State* v. *Cain,* 20 W. Va. 679.

We have carefully examined defendant's contentions as to the giving to the jury of the several instructions on behalf of the State. We think the only substantial objections to such instructions relate to the questions raised as to the validity of the indictment and as to the sufficiency of the evidence to support a finding of malice, deliberation or premeditation on the part of defendant. What has been said as to such questions, we think, sufficiently disposes of the contentions as to such instructions. Neither do we find any prejudicial error in the refusal to give to the jury certain instructions offered by defendant.

Numerous assignments of error relating to objections of defendant to admission or rejection of evidence, incorporated in six separate special bills of exceptions have been made. These have been carefully examined, and we

are of the view that there exists no substantial merit in such alleged errors, except as to questions raised by special bills of exceptions Nos. 1 and 2. Special bill of exceptions No. 1 points out that during the cross-examination of James Hooper, a witness testifying on behalf of defendant, he was asked if he had not made a statement to the investigating officers relating to the homicide, to which question he answered: "Sure you have it right there". He was then asked: "I will ask you to state if in that written statement you didn't tell the officers someone yelled 'Look out, and I heard a shot and I knew Theodore Johnson was shooting at him'?". He answered: "I seen that statement". The witness, on direct examination, was asked: "Do you know, Mr. Hooper, who shot and killed Robert Garrett?" He replied: "I do not".

We think the admission of the answers constituted no prejudicial error. The complaint seems to be that the State should not have been permitted to cross-examine the witness Hooper about a written statement which was not introduced in evidence. There was, however, no dispute as to the making of the statement, or as to the contents thereof. The witness readily admitted both. The witness had testified, on direct examination, to the effect that he did not know "who shot" Garrett. That testimony was directly in conflict with the statement made to the officers, to the effect that he "knew Theodore Johnson was shooting at him". The State was entitled to show such conflict for the purpose of impeaching or weakening the testimony of the witness. See 20 M. J., Witnesses, Section 56.

Coming to the question raised by special bill of exceptions No. 2, the physician who performed an autopsy on the body of Garrett and removed a bullet therefrom, testified, in effect, that the bullet caused the death of Garrett. On direct examination, the physician was asked "to examine that bullet and tell the Court and jury if you can identify that bullet?" The answer was: "It looks to be about the same. I would say to the best of my judgment that is the ball". The bullet showed no

identifying marks or peculiarities by which it could be definitely identified. As above noted, the weapon from which the shot which killed Garrett was fired was never found. There was no attempt made on the part of the State to imply or show that the bullet was fired from any particular gun.

We can not say that the admission of the answer of the physician constituted prejudicial error. At most, the jury were informed of the size and type of bullet which caused the death of Garrett. Such evidence had no relation to questions of the identity of the person who fired the shot, and there is no basis to even assume that the jury, in passing on such questions, so considered such testimony. As above pointed out, such questions were, in the province of the jury, answered by other evidence.

Finding no prejudicial error, the judgments of the Circuit Court of Harrison County and the Criminal Court of Harrison County are affirmed.

*Affirmed.*