STATE OF WEST VIRGINIA

*v.*

RANDALL JAMES STARKEY

(No. 13790)

Decided May 2, 1978.

*Catsonis & Linkous, Leo Catsonis, Thomas L. Linkous* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Pamela Dawn Tarr*, Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Randall Starkey appeals his conviction of attempted murder in the second degree. He assigns four grounds as error. First, the verdict is not supported by the evidence. Second, the State's instruction on the use of a deadly weapon is erroneous. Third, the trial court erred in refusing his self-defense instruction. Fourth, the judge made prejudicial remarks about him in front of the jury.

The initial question of whether there was sufficient evidence to support the guilty verdict requires a brief examination of our standard of review. This Court has used two standards. One is exemplified by the Fourth Syllabus of *State v. Johnson*, ___ W. Va. ___, 226 S.E.2d 442 (1976), quoting from *State v. Fischer*, ___ W. Va. ___, 211 S.E.2d 666 (1974), which in turn cited *State v. West*, 153 W. Va. 325, 168 S.E.2d 716 (1969):

> " 'Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' "

Another formulation of the standard is found in the First Syllabus of *State v. Bias*, 156 W. Va. 569, 195 S.E.2d 626 (1973):

> " 'In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.' Syllabus pt.

1, *State v. Bowles*, 117 W.Va. 217, 185 S.E. 205 (1936); Syllabus pt. 3, *State v. Lewis*, 133 W.Va. 584, 57 S.E.2d 513 (1949)."

Despite some dissimilarity in language, it can be seen that there are common strands between the two standards. The chief dissimilarity lies in expressing what is sufficient evidence. *Johnson* requires "substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt," while the test in *Bias* is "that the evidence was manifestly inadequate." It is obvious that these statements are opposite sides of the same coin. Where there is substantial evidence the verdict will be affirmed. On the other hand, where the evidence is manifestly inadequate, the verdict will be reversed.

*Johnson* invokes the rule that the evidence is to be viewed most favorably to the prosecution, a reference to the fact that in most criminal cases there will be conflicting evidence between the prosecution and defense witnesses and with a guilty verdict the court may assume the jury believed the prosecution witnesses. The *Bias* rule acknowledges this same problem when it says the verdict would be upheld "though the evidence adduced by the accused is in conflict with the state's evidence."

The *Bias* standard is more complete in setting the requirement of viewing the evidence by impartial minds, a point which is absent from the *Johnson* test, but it refers to an appraising of the evidence by the trial or reviewing court, undoubtedly on the assumption that their impartiality is inherent.

A solution to these linguistic differences would be to combine the best elements of both into one integrated rule, as follows:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The

evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Necessarily, in applying this standard, a review of the facts surrounding the crime must be made. Here, as not unexpected, there were areas of conflicting testimony, but taking the testimony most favorable to the prosecution, the following facts are found from the record.

On June 20, 1975, the victim of the crime, Blakely Sower, together with his two brothers, Ronald and Cloyce, went to the home of the defendant Starkey, who had married Ronald's former wife. The purpose of the visit was to enable Ronald Sower to pick up his two minor children under a custody visitation arrangement embodied in a court order. There was testimony that on previous occasions Ronald had encountered trouble when picking up the children, and his attorney had advised him to take someone with him as a witness.

When the three brothers arrived at the premises the children were not ready to leave, and the brothers waited outside the house. The defendant Starkey appeared at the kitchen door and began to verbally abuse the Sowers, calling them "punks." He invited them to come around the house to the basement door where he said he would "take care of them."

The Sower brothers walked around the house to the basement door. On the way, the prosecuting witness Blakely picked up a stick. When they arrived at the basement door the defendant called at them to come in. When they declined to do so, the defendant reached behind the door and brought out a shotgun. He pointed it at Blakely Sower and, after threatening to shoot him, discharged the shotgun into the ground near where Blakely was standing and ordered the brothers off the premises.

The brothers then returned to the front of the house and by this time the children had come out of the house and their father, Ronald Sower, took them to his car. During this time an argument was ensuing between Ronald and his former wife. Ronald and his brother Cloyce got into their car with the children and began backing it down the driveway. The defendant was throwing gravel at them. Blakely Sower began to throw gravel at the defendant, who retaliated by throwing gravel back. Blakely then got into his truck and drove it through the driveway. As he passed the house, the defendant fired his shotgun. The pellets hit the right side of the topper on the truck bed, breaking the glass window.

Defendant's position is that he had not provoked the Sower brothers, but that it was they who had called him names and threatened him. He testified that had he wanted to kill Blakely Sower he could have done that when he fired the shotgun into the ground. The defendant testified he fired at the truck after he had pulled his wife from the path of the truck and it had gone past him.

At common law the attempt to commit a crime was itself a crime. 21 Am. Jur. 2d *Criminal Law* § 110. This Court in *State v. Hager*, 50 W. Va. 370, 40 S.E. 393 (1901), stated that to constitute the crime of the attempt to commit a crime, "there must be an intent to commit the act, and some act done towards its consummation of such a nature as to constitute the attempt to commit the offense." 50 W. Va. at 371, 40 S.E. at 394. Much the same definition of the crime of attempt is found in *State v. Franklin*, 139 W. Va. 43, 54, 79 S.E.2d 692, 699 (1953), where we referred to the Virginia case of *Thacker v. Commonwealth*, 134 Va. 767, 769, 114 S.E. 504, 505 (1922).

W.Va. Code, 61-11-18, sets the general penalties for the crime of attempt. It has not been suggested in any of our prior decisions that this statute was intended to modify the common law elements of the crime.

The law surrounding criminal attempts has produced considerable commentary relating to the vagueness of its elements.[1] Admittedly the elements are vague, but this results from the fact that an attempt to commit a crime covers a broad spectrum of different criminal offenses. Each criminal offense contains separate elements. Consequently, the type of facts necessary to prove an attempt to commit murder will not be the same as those necessary to prove an attempt to commit embezzlement or arson.[2]

Yet from a general definitional standpoint, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime. 22 C.J.S. *Criminal Law* § 75(1); 21 Am Jur. 2d *Criminal Law* § 110. In *State v. Gill*, 101 W. Va. 242, 244, 132 S.E. 490, 491 (1926), we emphasized the necessity of showing a clear intent to commit the underlying crime, where one is charged with the attempt to commit it.

Defendant argues there is no evidence of his intent. He points to the time he fired the shotgun at the ground near Blakely Sower, and argues that if he had intended to kill him he could easily have done so then. The obvious response to this point is that while there may have been no intent to kill formed at that time, this does not preclude the required intent from being present when he fired at Blakely Sower in his truck.

Proof of intent in a criminal case can be developed from the circumstances surrounding the crime. This is the customary manner of proving malice in a murder

---

[1] *See* Smith, *Two Problems in Criminal Attempts*, 70 Harv. L. Rev. 422 (1957); Arnold, *Criminal Attempts—The Rise and Fall of an Abstraction*, 40 Yale L.J. 53 (1930); Sayre, *Criminal Attempts*, 41 Harv. L. Rev. 821 (1928); R. Perkins, *Criminal Law* 552 (2nd ed. 1969), *et seq.*; Comment, 62 W. Va. L. Rev. 388 (1960).

[2] As one commentator has noted, "The crime of attempt does not exist in the abstract but rather exists only in relation to other offenses, . . ." W. LaFave & A. Scott, *Handbook on Criminal Law* 49 (1972).

case, since the defendant rarely admits this element of the crime. *State v. Hamrick*, 112 W. Va. 157, 163 S.E. 868 (1932). The type of criminal intent required to be proved depends on the degree of murder.

The term "murder" must be defined in conjunction with W.Va. Code, 61-2-1, where the Legislature established the distinction between first and second degree murder.[3] In *State v. Stevenson*, 147 W. Va. 211, 127 S.E.2d 638 (1968), *rev'd on other grounds, Boles v. Stevenson*, 379 U.S.43, 13 L. Ed. 2d 109, 85 S.Ct. 174 (1964), this Court noted at common law there were no degrees of murder, and went on to state that under our statute first degree murder requires a deliberate and premeditated killing. It has also been said that the distinctive element in first degree murder is the specific intent to take life. *State v. Hertzog*, 55 W. Va. 74, 46 S.E. 792 (1904).

It is clear that our murder statute is not designed to cover all the essential elements of murder, particularly second degree murder, since it concludes after identifying those acts which are considered first degree murder, "All other murder is murder of the second degree." Murder in the second degree is the unlawful killing of another with malice. *State v. Bowles*, 117 W. Va. 217, 185 S.E. 205 (1936); *State v. Gunter*, 123 W. Va. 569, 17 S.E.2d 46 (1941).

This Court has always recognized that malice is an essential element to both murder in the first and second degree. *State ex rel. Combs v. Boles*, 151 W. Va. 194, 198, 151 S.E.2d 115, 118 (1966), and cases cited therein. However, since malice is essentially a form of criminal intent, the application of the same term to the two degrees of murder tends to create some confusion unless it is kept in mind that in the area which we are discussing,

---

[3] W.Va. Code, 61-2-1, provides:

"Murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree."

first degree murder carries the additional requirement of a deliberate and premeditated intent to kill.[4]

The term malice has been frequently used, but not extensively defined, by this Court. In *State v. Douglass*, 28 W. Va. 297, 299 (1886), this statement was made:

"... [T]he source of which said malice is not only confined to a particular ill will to the deceased, but is intended to denote ... an action flowing from a wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indication of a heart regardless of social duty and fatally bent on mischief."

See also *State v. Panetta*, 85 W. Va. 212, 219-220, 101 S.E. 360 (1919); *State v. Abbott*, 64 W. Va. 411, 62 S.E. 693 (1908).

In discussing the term malice in *State v. Gunter, supra*, the Court stated: "It would seem to be a mental attitude, the method of proving which cannot be definitely prescribed." 123 W. Va. at 574, 17 S.E.2d at 49. It has been observed that malice need not exist for any appreciable period of time before the moment of killing. *State v. Green*, ____ W. Va. ____, 206 S.E.2d 923 (1974). While *Gunter* uses the terms "actual" and "legal malice," these terms are not defined. We do not believe these terms provide any assistance in understanding the concept of malice.[5]

---

[4] We express no view as to the intent requirement of the statutory grounds for first degree murder such as by poison, imprisonment and starving.

[5] Several commentators have criticized the malice standard as being too broad and therefore too vague to analyze the varieties of criminal intent that are involved in murder. They would categorize murder by the type of intent arising from objective actions. Thus, W. LaFave & A. Scott, in their *Handbook on Criminal Law* 528, *et seq.* (1972), use the classifications "Intent-to-Kill Murder;" "Intent-to-do-Bodily Injury Murder;" "Depraved Heart Murder;" "Felony Murder;" and "Resisting-Lawful-Arrest Murder." R. Perkins, *Criminal Law* 35, *et seq.* (2nd ed. 1969), subdivides malice into: "Intent to Kill or Inflict Great Bodily Injury;" "Wanton and Wilful Disregard

In the present case there was sufficient evidence from which the jury could have found beyond a reasonable doubt that the defendant's act of firing at Blakley Sower was done with the requisite criminal intent to sustain a conviction of second degree murder. If Blakely Sower had been killed by the shotgun blast, the jury could have concluded from all of the surrounding circumstances that malice was proven beyond a reasonable doubt. The State's evidence showed that shortly before the incident, the defendant had threatened Sower and acted in a hostile manner toward him. The shotgun was fired in the direction of where Blakely was seated in his truck. There was evidence to negate that the defendant did not shoot out of sudden provocation. Thus, malice was proven to exist.

The fact that no injury occurred does not militate against circumstantial evidence establishing criminal intent, since the inability to complete the underlying crime is the hallmark of an attempt. There are certain situations where the impossibility of completing the underlying crime may provide a defense to an attempt charge, but in these instances the test of impossibility is viewed from the facts known to the accused. 21 Am. Jur. 2d *Criminal Law* § 112; *Andrews v. Commonwealth*, 135 Va. 451, 115 S.E. 558, 561 (1923). Here, from the circumstances surrounding the firing of the shotgun, there is nothing to suggest that serious bodily harm or death was not intended.

Defendant contends alternatively that even if there was sufficient circumstantial evidence to carry the question of intent to the jury, the instruction on malice was constitutionally defective under *Mullaney v. Wilbur*, 421 U.S.684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), and our holding in *State v. Pendry*, ___ W. Va. ___, 227 S.E.2d 210 (1976).

---

of Unreasonable Human Risk;" "The Felony-Murder Rule;" "Resisting Lawful Arrest;" and would substitute for the general term "malice" the phrase, "Man-Endangering State of Mind."

In order to understand *Mullaney*, it is important to recognize that the State of Maine, where the murder conviction arose, made no distinction in the degrees of murder. It followed the common law rule that recognized two types of intentional homicide, murder and manslaughter. "The common elements of both were that the homicide be unlawful—*i.e.* neither justifiable nor excusable—and that it be intentional." 421 U.S. at 685. The critical distinction between the two crimes was that malice aforethought was an essential ingredient of murder and without which the homicide would be manslaughter.[6]

The Court in *Mullaney* proceeded to trace the historical development of the law of homicide in this area and found that malice aforethought was the key distinguishing element between murder and manslaughter at common law:

> "It was said that 'manslaughter, when voluntary, arises from the sudden heat of the passions, murder from the wickedness of the heart.' 4 W. Blackstone, Commentaries 190. Malice aforethought was designated as the element that distinguished the two crimes, but it was recognized that such malice could be implied by law as well as proved by evidence." [421 U.S. at 692]

After completing its historical review, the Court in *Mullaney* made the dual conclusion that the element of acting in the heat of passion arising from sudden provocation was "the single most important factor in determining the degree of culpability attaching to an unlaw-

---

[6] The term "malice aforethought" comes from the common law where, because there were no degrees of murder, it was used interchangeably with the term "malice." 40 Am. Jur. 2d *Homicide* §§ 50, 52. R. Perkins, *Criminal Law* 34, *et seq.* (2nd ed. 1962). Our Court has rarely used the term "malice aforethought," preferring the general term "malice" to cover the criminal intent for second degree murder and malice, plus the further element of deliberation and premeditation, to prove first degree murder. *State v. Stevenson*, 147 W. Va. 211, 127 S.E.2d 638 (1968); *State v. Burdette*, 135 W. Va. 312, 63 S.E.2d 69, 81 (1950); *State v. Porter*, 98 W. Va. 390, 127 S.E. 386, 395 (1925).

ful homicide," and that "the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact [the lack of passion arising from sudden provocation]." 421 U.S. at 696.

Much of the background discussion in *Mullaney* was a preface to its central holding that a state may not, under the Due Process Clause, relieve the prosecution of the constitutional requirement of proving every essential element of a crime beyond a reasonable doubt. The error that *Mullaney* found was that under the law of Maine the jury was instructed, "that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved ... he acted in the heat of passion on sudden provocation." 421 U.S. at 686.[7]

This was error of a constitutional dimension under the Due Process Clause as malice was conclusively pre-

---

[7] The term "provocation" as it is used to reduce murder to voluntary manslaughter, consists of certain types of acts committed against the defendant which would cause a reasonable man to kill. Inherent in this concept is the further requirement that the provocation be such that it would cause a reasonable person to lose control of himself (act out of the heat of passion) and that he in fact did so. *State v. Clifford*, 59 W. Va. 1, 52 S.E. 981 (1906), *disapproved on other grounds, State v. Lawson*, 128 W.Va. 136, 36 S.E.2d 26 (1945); *State v. Michael*, 74 W. Va. 613, 82 S.E. 611 (1914); *State v. Galford*, 87 W. Va. 358, 105 S.E. 237 (1920). It is important to note that provocation is not a defense to the crime, but merely reduces the degree of culpability and this is the reason why *Mullaney* held it a violation of due process to shift the burden of proving provocation to the defendant. One of the most common types of provocation is an unprovoked assault on the defendant who responds in the heat of passion by killing the assailant. This ordinarily limits the degree of culpability to voluntary manslaughter. *State v. Morris*, 142 W. Va. 303, 95 S.E.2d 401 (1956). This situation is to be distinguished from the occurrence where the assault is not only unprovoked, but so extreme that the defendant reasonably views that his life will be taken or that great bodily harm will be done him, and he kills the assailant. Here self-defense, if found, will result in his acquittal. *State v. Cain*, 20 W. Va. 679, 700 (1882); *see also State v. Green*, ___ W. Va. ___, 206 S.E.2d 923, 926 (1974). Because the defense of self-defense if proven is a bar to conviction, the defendant has the burden of proving this fact.

sumed and the defendant had the burden shifted to him to disprove it by showing he acted in the heat of passion on sudden provocation.[8]

This Court in *Pendry* condemned several State instructions which were traditionally given in murder cases. While the entire istructions are not set out in the opinion, except in the case of State's Instruction No. E [227 S.E.2d at 218], sufficient information is given to follow the Court's reasoning. Of primary importance is the fact that *Pendry* does not condemn the use of inferences, but only the use of language giving conclusive presumptions to certain facts which are essential to proof of the criminal charge.

The presumptions on which *Pendry* commented were the presumption of malice from the use of a deadly weapon, and the presumption that all murders are considered to be murder in the second degree [227 S.E.2d at 223, 224]. The vice of these presumptions as found by *Pendry* in the context of the instructions in which they were used was that they shifted from the State the burden of proof beyond a reasonable doubt of an essential element of the crime of murder that is malice.

In this case the instruction which is claimed to violate *Pendry* is set out in the margin.[9] Several differences are to be noted in this instruction and instructions set out in *Pendry*. First, this instruction is not couched in the mandatory language of a presumptive or conclusive finding. Of even more importance is the requirement that the inference does not even arise unless the jury find an absence of circumstances which "afforded the

---

[8] We do not read *Patterson v. New York*, ___ U.S. ___, 53 L. Ed. 2d 281, 97 S.Ct. 2319 (1977), as altering *Mullaney*. *Patterson* appears to permit states to statutorily create affirmative defenses and to require the defendant to prove the same by a preponderance of the evidence if so asserted.

[9] "The court instructs the jury that malice and intent can be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which you do not believe afforded the defendant excuse, justification or provocation for his conduct."

defendant excuse, justification or provocation for his conduct."

This avoids the fundamental error found in *Mullaney,* which was the instructional law given to the Maine jury that once the homicide was established as unlawful and intentional, malice aforethought was conclusively implied *unless* the defendant proved he acted on sudden provocation. Here the inference does not arise *until* the jury finds that there was no "excuse, justification or provocation."

Moreover, the instruction is not made binding and contains no language which indicates the defendant has any burden of proof to negate an essential element of the crime. We, therefore, conclude there was no error in giving the instruction.

The defendant's next point is that the trial court committed reversible error in refusing to give four tendered instructions on the theory of self-defense. The trial court did give a self-defense instruction which had been offered by the State. This instruction accurately stated the law on self-defense. This court has stated in *State v. Hudson,* 128 W. Va. 655, 667, 37 S.E.2d 553, 559 (1946), that: "The duplication of instructions is unnecessary and undesirable." We do not find reversible error on this point.

Finally, the defendant argues that error was committed when the trial court at one point admonished the defendant that "you better not get smart with Court . . . or you'll go to jail now." The court's remarks occurred during the direct examination of the defendant. The court, after several objections by the prosecutor that the defendant was not being responsive to the questions and was giving hearsay testimony, advised the defendant to testify only "to what he saw and knows." The defendant responded to the court, "That's what I saw and that's what I know." It was at this point that the court's alleged prejudicial statement was made.

We are cited *State v. Cokeley,* ___ W. Va. ___, 226 S.E.2d 40 (1976), where the court held that it is revers-

ible error for a trial court to threaten a defense attorney with contempt when he is cross-examining a key State witness and co-indictee as to whether he expects to get favorable treatment by cooperating with the State. In *State v. Pietranton*, 137 W. Va. 477, 72 S.E.2d 617 (1952), this Court followed a number of prior cases and concluded it is error for a trial court to inject itself into a trial by asking a number of questions of a defense witness to the extent that it creates a prejudicial effect on the jury.

*Cokeley* noted that such action on the part of the trial court must be viewed more broadly than from the narrow window of the incident itself. ____ W. Va. at ____, 226 S.E.2d at 44. The *Pietranton* case indicates it may not be necessary on all occasions for trial counsel to object to what he considers improper conduct on the part of the court. Yet, both it and the later case of *State v. McGee*, ____ W. Va. ____, 230 S.E.2d 832, 833 (1976), demonstrate that there is still the requirement that trial counsel must in some manner make known to the court his objection to the court's conduct. Here, no such action was taken by trial counsel, and consequently the point is not preserved for appeal.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Hampshire County.

*Affirmed.*