STATE OF WEST VIRGINIA

*v.*

ARVILLE EUGENE RUTTER

(No. 13970)

Decided March 13, 1979.

*Richard A. Bush* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Joseph C. Cometti,* Assistant Attorney General, for defendant in error.

NEELY, JUSTICE:

This appeal challenges the sufficiency of the evidence supporting appellant's conviction of grand larceny. Appellant further alleges that a statement made by the prosecutor in rebuttal to appellant's closing argument was unsupported by the evidence. We find neither challenge meritorious and, consequently, affirm the judgment of the Circuit Court of Wood County.

On 20 September 1975, appellant, Arville Eugene Rutter, wrote a personal check in the amount of $102.00 to the order of a Parkersburg retail store to pay for a watch. Appellant did not have an account at the Wood County Bank, the bank upon which the check was drawn, at the time the check was written. Mr. Larry Holdren, cashier of the bank, testified that appellant and appellant's wife had opened a joint checking account at the bank on 27 December 1974 which account was closed by the bank of 24 February 1975 because a large number of insufficient funds checks were being presented for payment from the account. Mr. Holdren further testified that no deposits were made after the initial opening and that two statements, one dated 22 January 1975 showing a balance of $38.31 and one dated 25 February 1975 showing a zero balance, were mailed to appellant at the Mitchell Trailer Court in Washington, West Virginia. The bank also sent a notification that the account was closed to appellant at his parents' home in Marietta, Ohio,[1] but appellant denied receiving either the notification of closing or the 25 February statement because, he alleged, he had moved to Florida on or about 14 February 1975. Appellant did testify that he had re-

[1] No explanation was given concerning why the statements and the closing notification were mailed to different addresses, although the bank cashier stated that an address change had probably been filed.

ceived one statement from the bank (which had to be the 22 January statement since only two statements were sent) but thought there was approximately $200.00 in the account on 20 September 1975 when he wrote the check.

Berry Sorenson, a defense witness, testified that she met appellant soon after he arrived in Florida where they formed a close relationship leading to her returning to West Virginia with him in September 1975. She testified that after arriving in West Virginia she, following an argument with appellant, stole a number of appellant's blank checks which she fraudulently uttered without appellant's knowledge. The prosecutor was able to elicit substantial testimony of a close continuing relationship between appellant and Betty Sorenson: both admitted that their liaison was more than friendly; both admitted to being together on numerous occasions before and after 20 September 1975; Betty Sorenson admitted sharing with appellant some of the goods obtained by uttering appellant's checks; a salesman who took one of the checks testified that on 20 September 1975 he carried Betty Sorenson's purchase to her car where appellant was waiting; and, Betty Sorenson admitted purchasing a watch for appellant in Florida with a "bad check."

I

We are unable to accept appellant's contention that the State did not meet its burden to prove a present intent to defraud on the part of appellant at the time the check was uttered which is an essential element of larceny by false pretense. *See W.Va. Code*, 61-3-24 [1923]; *State v. Cobb*, 122 W.Va. 97, 7 S.E.2d 443 (1940). The proper standard of review was established in Syl. pt. 1 of *State v. Starkey*, ____ W.Va. ____, 244 S.E.2d 219 (1978);

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince the impartial minds of the guilt of the defendant beyond a reasonable doubt. The

evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice had been done.

Viewing the evidence in the light most favorable to the prosecution, we are unable to find it "manifestly inadequate." Appellant admitted receiving the 22 January 1975 bank statement showing a balance of $38.18 and could not remember making any deposits. From that testimony alone, the jury could easily disbelieve appellant's contention that he thought there was approximately $200.00 in his account on 20 September 1975. Furthermore, the State presented sufficient evidence for the jury reasonably to believe appellant and Betty Sorenson acted in concert and that appellant was aware of Betty Sorenson's activities before he uttered the check which served as the basis for this prosecution.

## II

In the rebuttal portion of his closing argument, the prosecutor, in speaking about a possible concert of action between appellant and Betty Sorenson, said:

[R]emember Miss Sorenson saying she gave a bad check to Montgomery Ward in Florida to get the watch for Mr. Rutter to begin with, and took it back and got $102.00 back ... this was an operation they were carrying on in Florida, they both knew what they were doing.

If this statement were not supported by evidence, as appellant contends, we would have to determine whether it would serve as a basis for reversal; however, the prosecution presented substantial evidence from which the jury could reasonably infer action in concert. Furthermore, the statement was made in rebuttal after the defense argued extensively that the evidence implied Betty Sorenson's and appellant's actions were independent; the prosecutor was clearly entitled to present his view of the evidence in an attempt to disprove appel-

lant's primary affirmative defense, namely that *without his knowledge* Betty Sorenson had uttered bad checks on his account and reduced his balance to the point where the check in question would not clear. Betty Sorenson was called as a defense witness and the evidence of systematic efforts on her part to defraud through uttering bad checks with the knowledge and consent of the appellant was elicited on cross examination.

*Affirmed.*