STATE OF WEST VIRGINIA

*v.*

GARRY L. SIMMONS

(No. 15018)

Decided December 10, 1981.

*Marvin L. Downing, Wilkinson, Cragun & Barker, and John Michael Facciola,* for appellant.

*Chauncey H. Browning,* Attorney General, and *Joseph P. Henry,* Assistant Attorney General, for appellee.

PER CURIAM:

This is an appeal by Garry L. Simmons from his conviction in the Circuit Court of Pendleton County on the charge of grand larceny. Appellant contends that the evidence presented at trial was insufficient to create a jury question on the *animus furandi*, or intent to permanently deprive, element of the offense of grand larceny.[1] We agree and reverse.

The undisputed facts of the relationship between the appellant Simmons and the complaining witness, Stanley Deimler, and Stanley's brother, Herman Deimler, are important in this appeal. In the spring of 1978, the Deimlers met Simmons and an associate of Simmons, Ben West. The Deimlers, through a corporation named ARCO, were in the cable television business in Pennsylvania. Simmons expressed interest in establishing a cable television system in Pendleton County, West Virginia. Simmons, through Mountaineer Cablevision Real Estate and Construction, Inc., hired the Deimlers to install the proposed system. Herman Deimler did some work on this system, but construction was not completed, apparently due to a lack of funds, and the rejection of Mountaineer Cablevision's application for a cable television franchise in Pendleton County.

The appellant, after collapse of the initial project, proposed to the Deimlers that he, through Mountaineer Cablevision, bid on a construction contract to be let by the Department of the Navy for the extension of barracks at the Sugar Grove Naval Base in Pendleton County. The Deimlers agreed and, as part of the agreement, the Deimlers consented to become personal surety on the appellant's contract with the Navy.

After the Sugar Grove contract was awarded to Mountaineer, Simmons, West and Stanley Deimler joined in making an application for a cable television franchise in Appomattox, Virginia. According to Stanley Deimler, al-

---

[1] Because of our disposition of this assignment of error, it is unnecessary for us to address appellant's remaining assignments of error.

though the franchise was bid for by ARCO, and awarded in ARCO's name, Mountaineer Cablevision was to provide the capital for the proposed system, with Stanley Deimler providing only the technical assistance. To complicate matters further, Stanley Deimler became a shareholder in Mountaineer Cablevision.

On February 24, 1979, the check at the center of the present controversy was issued by ARCO to the appellant. It was signed by Stanley Deimler. On February 26, Simmons deposited this check, together with two checks for smaller amounts, in the Mountaineer Cablevision account at the Pendleton County Bank, and immediately withdrew $300 in cash, leaving a balance of $1,282.96 in the Mountaineer account. Stanley Deimler testified that sometime in March, 1979, Simmons told him that the check for $1,500 had been used for purposes other than those intended by Stanley. Herman Deimler testified to hearing Simmons make this admission on another occasion in March of 1979.

Stanley Deimler admitted, however, that from March through July of 1979, ARCO advanced Mountaineer a total of $28,807.82, and that, throughout this period, Stanley Deimler, through ARCO, continued to pay Simmons $500 per week in salary for his work on the Sugar Grove project. Stanley Deimler made no deductions from the salary for the $1,500 allegedly stolen by Simmons. As late as July 7, 1979, Stanley Deimler was willing to continue to do business with Simmons, and, indeed, evidenced his intent to pay Simmons a salary of $450 per week to manage proposed ARCO subsidiaries.

From the testimony of both Stanley Deimler and his brother, Herman, it is clear that, after being informed of what had happened to the check, the Deimlers continued to maintain their business relationship with Simmons. They apparently made no demands for the restitution of the $1,500, and appear to have acquiesced to the redirection of the funds.

At the close of the State's case, defense counsel moved for a directed verdict based on the State's failure to establish a *prima facie* case of grand larceny. The trial

court denied the motion, and the defense rested without presenting witnesses.

The issue presented by this appeal is whether the State's proof, taken as a whole, was sufficient to create a jury question on the element of *animus furandi*, which is essential to the offense of grand larceny. As we stated in syllabus point 2 of *State v. Hudson*, 157 W. Va. 939, 206 S.E.2d 415 (1974):

> *Animus furandi*, or the intent to steal or to feloniously deprive the owner permanently of his property, is an essential element in the crime of robbery.

In the case *sub judice*, the appellant reported to the Deimlers that he had not followed instructions with regard to the check immediately after he had misapplied the funds. Throughout subsequent months, ARCO, the victim's corporation, paid Simmons a $500 per week salary. Indeed, a proposal to allow Simmons to manage proposed subsidiaries was approved by Stanley Deimler approximately nine weeks before execution of the warrant initiating this prosecution. Viewed in the light most favorable to the prosecution these facts, which are not in dispute, are manifestly inadequate to lead reasonable minds to conclude that any deprivation of property by Simmons was done with intent to permanently deprive the owner of the property. In this situation the rule of law is clear:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done. Syllabus Point 1, *State v. Starkey*, 161 W. Va. 517, 244 S.E.2d 219 (1978).

The State's failure to prove an essential element of the offense of grand larceny is a manifest inadequacy in the evidence. Certainly, it would be unjust to allow a conviction to stand in a case in which the defendant's timely motion for a directed verdict was denied, though the State had failed to prove an essential element of the crime charged. In view of the State's failure to prove an essential element of the offense of grand larceny, the defendant's motion for a directed verdict should have been granted by the trial court.

Accordingly, the judgment of the Circuit Court of Pendleton County is reversed and the defendant is unconditionally discharged from custody. *State v. Dobbs*, 163 W. Va. 630, 259 S.E.2d 829, 833 (1979).

*Reversed.*